Court of Appeals No. 13-57128

---

## UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

---

MONSTER BEVERAGE CORPORATION, a Delaware corporation; and
MONSTER ENERGY COMPANY, a Delaware corporation,
*Plaintiffs-Appellants*,

v.

DENNIS HERRERA, in his official capacity as
City Attorney of San Francisco,
*Defendant-Appellee.*

---

On Appeal from the United States District Court, Central District of California
The Honorable Virginia A. Phillips, Judge Presiding
(Case No. 5:13-cv-00786-VAP-OP)

## **APPELLANTS' OPENING BRIEF**

---

**MORRISON & FOERSTER LLP**
James J. Brosnahan (SBN 34555)
William L. Stern (SBN 96105)
Claudia M. Vetesi (SBN 233485)
425 Market Street
San Francisco, CA 94105-2482
Telephone: 415.268.7000

**MORRISON & FOERSTER LLP**
Dan Marmalefsky (SBN 95477)
Purvi G. Patel (SBN 270702)
707 Wilshire Blvd., Suite 6000
Los Angeles, CA 90017-3543
Telephone: 213.892.5200

*Attorneys for Plaintiffs-Appellants*
Monster Beverage Corporation and Monster Energy Company

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, counsel for Plaintiffs-Appellants Monster Beverage Corporation and Monster Energy Company, states that Monster Energy Company is a wholly owned subsidiary of Monster Beverage Corporation, which is a publicly traded corporation that has no parent company. No publicly traded corporation currently owns 10% or more of Monster Beverage Corporation's stock. In connection with a previously announced transaction involving The Coca-Cola Company, Coca-Cola, a publicly traded corporation, is expected to acquire approximately 16.66% of common stock of Monster Beverage Corporation.

Dated: November 28, 2014        Respectfully submitted,

MORRISON & FOERSTER LLP

By: /s/ Dan Marmalefsky
     Dan Marmalefsky

*Attorneys for Plaintiffs-Appellants Monster Beverage Corporation and Monster Energy Company*

i

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... iii

INTRODUCTION AND SUMMARY OF ARGUMENT ....................................... 1

ISSUES PRESENTED ........................................................................... 5

JURISDICTIONAL STATEMENT ........................................................... 5

STATEMENT OF THE CASE .................................................................. 6

    A.    The Parties .......................................................................... 6

    B.    MBC and Monster Energy's Complaint ..................................... 6

    C.    The City Attorney's State-Court Action .................................... 8

    D.    The City Attorney's Original Motion to Dismiss and the District Court's Order ............................................................ 9

    E.    The *Fisher v. Monster* Lawsuit ............................................ 10

    F.    The City Attorney's Renewed Motion to Dismiss and the District Court's Order .......................................................... 11

    G.    FDA's Ongoing Investigation into the Safety of Energy Drinks ....... 12

LEGAL STANDARD ........................................................................... 13

ARGUMENT ................................................................................... 14

I.    THE DISTRICT COURT ERRED IN APPLYING THE *YOUNGER* ABSTENTION DOCTRINE .................................................................. 14

    A.    There Was No Ongoing State Judicial Proceeding Against MBC *and* Monster Energy ...................................................... 15

        1.    Monster Energy was not sued until after the district court ruled on *Younger* .......................................................... 15

        2.    Proceedings of substance on the merits took place in federal court before the state-court action was remanded ....... 16

    B.    No Uniquely Important State Interests Were Implicated ................. 20

        1.    No state interest is served where the state action is preempted ............................................................... 22

            a.    The FDCA's express preemption provision applied ..... 23

i

# TABLE OF CONTENTS
### (continued)

**Page**

        b.    The state action is impliedly preempted by the FDCA ........................................................................... 26

        2.    No overriding state interest is served when federal interests outweigh state interests ............................................. 28

    C.    While State-Court Proceedings Are Adequate to Raise Federal Claims, Such Claims Had Already Been Raised and Addressed Here ....................................................................................... 31

    D.    This Action Would Not Have Interfered with State Proceedings ...... 32

II.    THE DISTRICT COURT IMPROPERLY FOUND THAT THIS CASE WAS BARRED BY THE ANTI-INJUNCTION ACT .................... 34

    A.    The City Attorney's Anti-Injunction Act Argument Was Untimely and Barred .......................................................................... 34

    B.    Even if Not Barred, Plaintiffs Did Not Seek Relief Prohibited by the Anti-Injunction Act ................................................................ 37

    C.    Plaintiffs' Section 1983 Claim Fell Within an Established Exception to the Anti-Injunction Act .................................................. 41

CONCLUSION .................................................................................................... 43

STATEMENT OF RELATED CASES .................................................................. 44

CERTIFICATE OF COMPLIANCE .................................................................... 45

CERTIFICATE OF SERVICE ............................................................................... 1

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aaronson v. Vital Pharm., Inc.*,
  No. 09-CV-1333, 2010 WL 625337 (S.D. Cal. Feb. 17, 2010) .........................30

*AmerisourceBergen Corp. v. Roden*,
  495 F.3d 1143 (9th Cir. 2007) .....................................................................15, 20

*Anderson v. Nemetz*,
  474 F.2d 814 (9th Cir. 1973) .............................................................................42

*Babbitt v. United Farm Workers Nat'l Union*,
  442 U.S. 289 (1979)............................................................................................26

*Baffert v. Cal. Horse Racing Bd.*,
  332 F.3d 613 (9th Cir. 2003) .............................................................................21

*Baggett v. Dep't of Prof'l Regulation*,
  717 F.2d 521 (11th Cir. 1983) ...........................................................................22

*Bank One Del., NA v. Wilens*,
  No. SACV 03-274-JVS ANx, 2003 WL 21703627
  (C.D. Cal. June 13, 2003) ...........................................................................35, 38

*Barancik v. Investors Funding Corp.*,
  489 F.2d 933 (2d Cir. 1973) .......................................................................38, 39

*Benavidez v. Eu*,
  34 F.3d 825 (9th Cir. 1994) ...............................................................................15

*Bennett v. Medtronic, Inc.*,
  285 F.3d 801 (9th Cir. 2002) .............................................................................14

*Bettencourt v. Bd. of Registration in Med. of Mass.*,
  904 F.2d 772 (1st Cir. 1990)...............................................................................16

*Bluehippo Funding LLC v. McGraw*,
  No. 2:07-0399, 2007 WL 6216559 (S.D.W. Va. Oct. 25, 2007).................26, 31

*Ciotti v. County of Cook*,
  712 F.2d 312 (7th Cir. 1983) ..............................................................19

*Cnty. of Allegheny v. Frank Mashuda Co.*,
  360 U.S. 185 (1959)............................................................................41

*Colo. River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976)............................................................................14

*Concord Communities, L.P. v. City of Concord*,
  No. 05-04094 JSW, 2006 WL 449135 (N.D. Cal. Feb. 23, 2006) .....................19

*Denny's, Inc. v. Cake*,
  364 F.3d 521 (4th Cir. 2004) ..............................................................39

*Dombrowski v. Pfister*,
  380 U.S. 479 (1965)............................................................................38

*E. & J. Gallo Winery v. Encana Energy Servs., Inc.*,
  388 F. Supp. 2d 1148 (E.D. Cal. 2005) ...............................................36

*Ex parte Young*,
  209 U.S. 123 (1908)............................................................................42

*Fed. Ins. Co. v. Union Pac. R.R. Co.*,
  651 F.3d 1175 (9th Cir. 2011) ............................................................16

*For Your Eyes Alone, Inc. v. City of Columbus*,
  281 F.3d 1209 (11th Cir. 2002) ....................................................18, 19

*Fort Belknap Indian Cmty. v. Mazurek*,
  43 F.3d 428 (9th Cir. 1994) ................................................................28

*FreeEats.com, Inc. v. State of Indiana*,
  502 F.3d 590 (7th Cir. 2007) ..............................................................19

*Gartrell Constr., Inc. v. Aubry*,
  940 F.2d 437 (9th Cir. 1991) ..............................................................22

*Green v. Benden*,
  281 F.3d 661 (7th Cir. 2002)...............................................................19

*Harper v. Pub. Serv. Comm'n*,
    396 F.3d 348 (4th Cir. 2005) ...............................................................30

*Hicks v. Miranda*,
    422 U.S. 332 (1975).............................................................................17

*Hidalgo v. New York*,
    No. 11-CV-5074(JS)(ARL), 2011 WL 5838494
    (E.D.N.Y. Nov. 21, 2011).....................................................................42

*Hoye v. City of Oakland*,
    653 F.3d 835 (9th Cir. 2011) ..............................................................17

*Huey v. City & Cnty. of S.F.*,
    No. C-07-02266 EDL, 2007 WL 2790294 (N.D. Cal. Sept. 20, 2007)..............21

*Int'l Longshoremen's & Warehousemen's Union v. Ackerman*,
    82 F. Supp. 65 (D. Haw. 1948).............................................................35

*Laclede Gas Co. v. St. Charles Cnty.*,
    713 F.3d 413 (8th Cir. 2013) ......................................................19, 20

*Life Partners, Inc. v. Morrison*,
    484 F.3d 284 (4th Cir. 2007) ..............................................................30

*M&A Gabaee v. Cmty. Redevelopment Agency of the City of L.A.*,
    419 F.3d 1036 (9th Cir. 2005) ............................................................19

*McCartney ex rel. McCartney v. Cansler*,
    608 F. Supp. 2d 694 (E.D.N.C. 2009),
    *aff'd sub nom. D.T.M. v. Cansler*, 382 F. App'x 334 (4th Cir. 2010)..........28, 29

*Miles v. Dep't of Army*,
    881 F.2d 777 (9th Cir. 1988) ..............................................................35

*Mitchum v. Foster*,
    407 U.S. 225 (1972)....................................................................41, 42

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992).............................................................................42

*N. Cnty. Cmty. Alliance, Inc. v. Salazar*,
    573 F.3d 738 (9th Cir. 2009) ..............................................................14

*Nat'l City Lines, Inc. v. LLC Corp.*,
    687 F.2d 1122 (8th Cir. 1982) ........................................................39

*Nat'l Labor Relations Bd. v. Nash-Finch Co.*,
    404 U.S. 138 (1971)........................................................................41

*Nevin v. Ferdon*,
    413 F. Supp. 1043 (N.D. Cal. 1976)................................................17

*New York by Abrams v. Trans World Airlines, Inc.*,
    728 F. Supp. 162 (S.D.N.Y. 1989) ............................................30, 31

*Oscar v. Univ. Students Co-op. Ass'n*,
    965 F.2d 783 (9th Cir. 1992) (en banc) ..........................................13

*Overton v. Wyeth, Inc.*,
    No. CA 10-0491-KD-C, 2011 WL 1343392 (S.D. Ala. Mar. 15, 2011)............36

*Palo Alto Tenants Union v. Morgan*,
    321 F. Supp. 908 (N.D. Cal. 1970)*,
    aff'd*, 487 F.2d 883 (9th Cir. 1973)................................................38

*People v. IntelliGender, LLC*,
    No. 13-56806, 2014 WL 5786718 (9th Cir. Nov. 7, 2014) ...............20

*Perez v. Nidek Co.*,
    711 F.3d 1109 (9th Cir. 2013) ........................................................27

*Perlberger v. Perlberger*,
    No. 97-4105, 1998 WL 472657 (E.D. Pa. Aug. 13, 1998)................26

*Philip Morris Inc. v. Harshbarger*,
    946 F. Supp. 1067 (D. Mass. 1996)................................................39

*Potrero Hills Landfill, Inc. v. Cnty. of Solano*,
    657 F.3d 876 (9th Cir. 2011) ..........................................................15

*Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*,
    204 F.3d 867 (9th Cir. 2000) ..........................................................14

*Readylink Healthcare, Inc. v. State Compensation Ins. Fund*,
    754 F.3d 754 (9th Cir. 2014) ..........................................................14

*Red Bluff Drive-In, Inc. v. Vance*,
648 F.2d 1020 (5th Cir. 1981) ..........................................................26

*Riley v. Cordis Corp.*,
625 F. Supp. 2d 769 (D. Minn. 2009)..................................................27

*Sprint Commc'ns, Inc. v. Jacobs*,
134 S. Ct. 584 (2013)..........................................................................14

*Steckman v. Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir. 1998) ............................................................13

*Steffel v. Thompson*,
415 U.S. 452 (1976).............................................................................15

*Thiokol Chem. Corp. v. Burlington Indus., Inc.*,
448 F.2d 1328 (3d Cir. 1971) .............................................................40

*Thompson v. Runnels*,
705 F.3d 1089 (9th Cir.),
*cert. denied*, 134 S. Ct. 234 (2013)....................................................16

*Turek v. Gen. Mills, Inc.*,
662 F.3d 423 (7th Cir. 2011) ..............................................................34

*Turner v. Smith*,
No. C 11-05176 CRB, 2012 WL 6019103 (N.D. Cal. Dec. 3, 2012) ...............21

*Weissburg v. Lancaster Sch. Dist.*,
591 F.3d 1255 (9th Cir. 2010) ............................................................16

*Younger v. Harris*,
401 U.S. 37 (1971).........................................................................passim

*Zuckman v. Monster Beverage Corp.*,
No. 2012 CA 8653 (D.C. Super. Ct. June 12, 2014) ..........................30

*Zwickler v. Koota*,
389 U.S. 241 (1967).............................................................................40

**STATUTES AND RULES**

28 U.S.C. § 2283 .......................................................................3, 35, 41

vii

42 U.S.C. § 1983 ................................................................................41, 42

Fed. R. Civ. P.
    7(a) ...........................................................................................34, 35
    12(c) .........................................................................................34, 35
    12(g) ...............................................................................................34
    12(h)(2) ..............................................................................34, 35, 36
    12(h)(3) ....................................................................................34, 35

**OTHER AUTHORITIES**

Center for Food Safety and Applied Nutrition Plan for Program Priorities, 2013-2014, *available at* http://www.fda.gov/AboutFDA/CentersOffices/OfficeofFoods/CFSAN/WhatWeDo/ucm366279.htm. ................................13, 29

FDA Commissioner for Foods and Veterinary Medicine Michael R. Taylor's Statement on the Institute of Medicine Report on Caffeine in Food and Dietary Supplements (Jan. 14, 2014), *available at* http://www.fda.gov/NewsEvents/Newsroom/PressAnnouncements/ucm382203.htm.......................13

FDA, Protecting the Public Health: Examining FDA's Initiatives and Priorities, *available at* http://www.fda.gov/NewsEvents/Testimony/ucm389072.htm. ...............................................................................13

IOM, Workshop on Potential Health Hazards Associated with Consumption of Caffeine in Food and Dietary Supplements, Agenda Book, *available at* http://www.iom.edu/~/media/Files/Activity%20Files/Nutrition/.................12, 13

Letter from Michele Mital, Acting Assistant Commissioner for Legislation for FDA, to U.S. Senator Richard J. Durbin, at p. 6 (Nov. 21, 2012), *available at* http://www.durbin.senate.gov/public/index.cfm/files/serve?File_ id~60fccdd9-7e60-45d4-b529-4bf472cc6eee .................................12

## INTRODUCTION AND SUMMARY OF ARGUMENT

In October 2012, Dennis Herrera, the elected City Attorney for the City and County of San Francisco, simultaneously informed both the public (by a letter he sent to the New York Times) and Monster Beverage Corporation that he was investigating the safety of Monster Energy® drinks. The City Attorney claims that Monster Energy® drinks — with less than half the caffeine found in coffeehouse brewed coffee — have "unsafe" levels of caffeine and are improperly marketed.[1]

Because energy drinks are marketed not just in San Francisco, but throughout all 50 states (and around the world), the City Attorney's claims encroach on federal interests, and in particular, the United States Food and Drug Administration's ongoing science-based evaluation into the safety (and related marketing) of food products to which caffeine has been added, including energy drinks. The results of that evaluation will impact consumers and all energy drink companies nationwide equally, as opposed to the City Attorney's claims, which selectively targeted the manufacture and sale of one company's products — Monster Energy® drinks — and purport to dictate California-only rules for products manufactured, labeled, and marketed throughout the country. Because the City Attorney's threatened action interfered with FDA's oversight of food

---

[1] Monster Energy® drinks are safe. More than 12 billion Monster Energy® drinks have been safely consumed around the world over more than a decade.

safety and labeling, the principles of comity and federalism required the district court to exercise its jurisdiction over Plaintiffs' lawsuit rather than dismiss it.

Plaintiffs Monster Beverage Corporation ("MBC") and Monster Energy Company ("Monster Energy") jointly sued for declaratory and injunctive relief after the City Attorney demanded that MBC (a holding company that conducts no operating business) stop selling Monster Energy® drinks as currently formulated and marketed.[2] Shortly after Plaintiffs filed suit, the case was transferred to the same district court judge assigned to a related consumer class action filed against both MBC and Monster Energy five months earlier, *Fisher v. Monster Beverage Corporation, et al.,* Central District of California Case No. 12-cv-2188 VAP.

Plaintiffs' suit prompted the City Attorney to file his own suit —against MBC alone — in California state court, alleging that MBC violated California's unfair competition law based on various false advertising theories. Virtually all of the City Attorney's claims mirrored claims earlier asserted in *Fisher.* MBC promptly removed the City Attorney's state-court action to federal court.

Unwilling to litigate in federal court, the City Attorney sought to dismiss this action based, in part, on *Younger* abstention, *i.e.*, the doctrine that federal courts should refrain from interfering with ongoing state-court proceedings under

---

[2] MBC and Monster Energy are collectively referred to herein as "Plaintiffs". Monster Energy is MBC's separately incorporated subsidiary that manufactures and markets Monster Energy® drinks.

certain narrow circumstances. *See Younger v. Harris*, 401 U.S. 37 (1971). The City Attorney moved to dismiss this action after MBC had removed the state-court action, and the district court found *Younger* abstention inapplicable because there was no ongoing state proceeding. After the state-court action was remanded to San Francisco Superior Court, the City Attorney renewed his motion based on *Younger*. He also advanced a new argument under the Anti-Injunction Act, 28 U.S.C. § 2283. The district court granted the City Attorney's renewed motion to dismiss on both grounds. This was reversible error for several reasons.

First, *Younger* abstention does not apply where, as here, federal interests outweigh state interests, *e.g.*, where the state-court claims are clearly preempted. The district court had already found that the City Attorney's demands about reformulating, relabeling, and adding warnings to Monster Energy® drinks exceed his authority and do not parallel the obligations imposed by FDA. Those demands are, thus, preempted.

Second, *Younger* abstention does not apply where, as here, proceedings of substance on the merits have taken place in a federal suit before the state-court action is remanded to state court. The district court had already addressed the legal issues presented in this case in depth, both when ruling on the City Attorney's original motion to dismiss and separately when it considered and granted two motions to dismiss in *Fisher*.

3

<u>Third</u>, any application of *Younger* should have been limited to the only defendant named in the state-court action — MBC — and only to purely state law claims.

<u>Fourth</u>, while state court was available as a venue for MBC to raise its arguments, there was no just cause to require the district court to abstain. The City Attorney could have litigated his claims in the district court, rather than filing a second action in state court. Ultimately, his claims fall within the jurisdiction of FDA, and the district court had already invested substantial resources familiarizing itself with the preemption and primary jurisdiction issues central to this case.

<u>Finally</u>, the City Attorney's new argument based on the Anti-Injunction Act was untimely and expressly prohibited by Federal Rule of Civil Procedure 12(g). But even if the City Attorney had timely raised this issue, it would not have made a difference. The Anti-Injunction Act does not apply where, as here, the federal complaint seeking injunctive relief was filed before the state-court proceeding commenced. Moreover, the Act applies to declaratory relief only when that relief would have the same effect as a prohibited injunction. Here, Plaintiffs sought a declaration regarding the City Attorney's demands (*i.e.*, those outside the scope of his authority), not the City Attorney's authority to file a claim under state law. In any event, the relief Plaintiffs sought was an expressly authorized exception to the Act.

4

This Court should reverse the district court's order of dismissal.

## ISSUES PRESENTED

1.     Did the district court err in finding that *Younger* abstention applied where:  (a) proceedings of substance on the merits took place in federal court before the state-court action was remanded; (b) the City Attorney's state-court claims are expressly and impliedly preempted by the federal Food, Drug, and Cosmetic Act (FDCA); (c) there is an overwhelming federal interest in determining safety standards for energy drinks; and (d) no state-court action was pending against one of the Plaintiffs, Monster Energy?

2.     Did the district court err in finding that Plaintiffs' declaratory and injunctive relief claims were barred by the Anti-Injunction Act where:  (a) the City Attorney did not raise the Anti-Injunction Act as a defense in his first motion to dismiss; (b) Plaintiffs sought relief from the federal court before the City Attorney filed his state-court action against MBC; (c) Plaintiffs' Section 1983 First Amendment claim fell within an expressly authorized exception to the Anti-Injunction Act; and (d) Plaintiffs' declaratory relief claims would not have the same effect as an injunction?

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3).  On December 16, 2013, it granted the City Attorney's motion to

dismiss, without prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6). (Excerpts of Record ("ER") 8.) Plaintiffs filed a timely notice of appeal on December 18, 2013. (ER1.) This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE CASE

### A. The Parties

Plaintiff Monster Beverage Corporation is a holding company that conducts no operating business except through its wholly owned subsidiaries. Its separately incorporated subsidiary, Plaintiff Monster Energy Company, manufactures and markets Monster Energy® drinks.

Defendant is the City Attorney of San Francisco, Dennis Herrera.

### B. MBC and Monster Energy's Complaint

On October 31, 2012, the City Attorney commenced an aggressive, public "investigation" into Monster Energy® drinks, by sending a letter to MBC and simultaneously providing a copy to the New York Times. He claims that Monster Energy® drinks are not generally recognized as safe (GRAS) under FDA regulations. (ER269 [¶ 44].) In March 2013, the City Attorney wrote to FDA urging the agency to take action. (ER270 [¶ 48].) Even though FDA responded affirmatively and informed the City Attorney of its decision to investigate the safety of caffeine in energy drinks, the City Attorney decided, notwithstanding his earlier request, not to defer to FDA's primary jurisdiction. (ER213-214.) On April

6

24, 2013, he sent MBC a "take-it-or-leave-it" demand letter, enclosing a 21-point injunction with sweeping demands. (ER201-211.) Among other things, he demanded that MBC: (i) revise the labels on Monster Energy® drinks to include a warning crafted by the City Attorney, that *inter alia*, mandated inclusion of the phrase "not appropriate for individuals under 18"; (ii) remove within one day any user generated content from a Monster Energy website that depicted any individuals that appear to be under the age of 18; (iii) not sponsor events that include athletes under the age of 18; (iv) cease selling Monster Energy® drinks in a can greater than 16 ounces containing 160 milligrams of caffeine; and (v) cease manufacturing, marketing, and providing to wholesalers and distributors Monster Energy® drinks in a 24-ounce can. (ER205-209.)

In response, Plaintiffs commenced this action on April 29, 2013. Plaintiffs sought declaratory and injunctive relief from the City Attorney's demands, which are impermissible and preempted by FDCA, subject to FDA's primary jurisdiction, and unconstitutional. (ER277-281 [¶¶ 72-93].) Plaintiffs alleged six claims for relief: (1) Preemption and Primary Jurisdiction; (2) First and Fourteenth Amendments — "Compelled Speech"; (3) First and Fourteenth Amendments — "Content-Based Speech"; (4) First and Fourteenth Amendments — "Commercial Speech"; (5) First and Fourteenth Amendments — Void for Vagueness as Applied; and (6) Violation of the Commerce Clause of the United States Constitution. (*Id.*)

Plaintiffs alleged that the City Attorney's demands, as set forth in Counts 2-5 of the Complaint, constituted a deprivation of rights actionable under 42 U.S.C. § 1983.

### C.    The City Attorney's State-Court Action

On May 6, 2013, the City Attorney filed his own suit against MBC in San Francisco Superior Court.[3]  There, he contends that Monster Energy® drinks contain unsafe levels of caffeine.  (ER102.)  Specifically, he alleges that MBC: (1) misbranded energy drinks to evade safety standards; (2) sells adulterated products that do not satisfy the federal GRAS standard; (3) sells misbranded products because the labeling on Monster Energy® drinks is misleading and warnings are inadequate; (4) markets energy drinks to adolescents and falsely suggests that the drinks are safe; (5) markets energy drinks to minors using alcohol and drug references without adequately warning about health consequences; and (6) markets energy drinks with unsubstantiated claims about the purported benefits of their ingredients.  (ER105 [¶ 8], 107 [¶ 19], 109 [¶ 27], 111-112 [¶ 34], 117-118 [¶ 44-45], 123 [¶ 62].)

---

[3] While this action was filed by both MBC and Monster Energy, the only defendant the City Attorney named in his state-court action was MBC.  (ER102.) It was not until September 5, 2014 — 16 months after commencing his state-court action and 9 months after the dismissal order at issue on this appeal — that the City Attorney in a Second Amended Complaint first brought suit against Monster Energy (adding fictitious Doe defendants as well).  (Request for Judicial Notice ("RJN") Ex. D.)

MBC removed the City Attorney's case to the Northern District of California on June 6, 2013; the City Attorney moved to remand on July 3, 2013. (ER142.)

### D. The City Attorney's Original Motion to Dismiss and the District Court's Order

On June 3, 2013, the City Attorney filed a motion to dismiss this case pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In his motion, the City Attorney argued: (1) Plaintiffs lacked standing to bring their claims, and the claims were not ripe; (2) the district court should abstain from the action under *Younger* abstention; (3) the district court should decline to exercise jurisdiction under the Declaratory Judgment Act; (4) the action violated the City Attorney's right to petition; and (5) Plaintiffs failed to state a claim for relief. (Clerk's Record ("CR") 17, 18.)

On August 22, 2013, the district court granted the City Attorney's motion with regard to the void for vagueness claim (Count 5), and the declaratory relief claim to the extent it was based on a violation of the Commerce Clause (Count 6), but denied the motion with respect to Plaintiffs' claims based on preemption, primary jurisdiction (Count 1), and the First Amendment (Counts 2-4: "Compelled Speech", "Content-Based Speech", and "Commercial Speech"). (ER145.) With regard to *Younger* abstention, the district court found the doctrine did not apply

9

because there was no ongoing state proceeding since MBC had removed the state-court action to federal court.  (ER158.)

### E.    The *Fisher v. Monster* Lawsuit

Starting before this action was filed and continuing throughout its pendency, the district court was presiding over *Fisher v. Monster Beverage Corporation, et al.* — a private class action that raised many of the same issues in this case.[4]  Just like the City Attorney, the *Fisher* plaintiffs sought relief under Section 17200 of California's Unfair Competition Law (UCL) on behalf of consumers of Monster Energy® drinks.  (RJN Ex. A ¶¶ 166-185, Ex. C ¶¶ 83-107.)  MBC and Monster Energy were each named as defendants in *Fisher*.  In that case, they first moved to dismiss arguing, among other grounds, that the *Fisher* plaintiffs' claims were preempted and barred by the doctrine of primary jurisdiction.  (RJN Ex. B at 12.)  On July 9, 2013, the district court granted the motion to dismiss, with limited leave to amend.  (RJN Ex. B.)  It dismissed, as preempted, claims based on failure to adequately label and adequately warn.  (*Id*. at 15-17).)

The *Fisher* plaintiffs filed a Second Amended Complaint on July 26, 2013.  (RJN Ex C.)  MBC and Monster Energy again moved to dismiss on the same grounds.  (ER46.)  On November 12, 2013, the district court granted the motion.  (*Id*.)  The district court again held that claims based on alleged inadequate labeling

---

[4] This action was transferred to the district court because it involved issues common to those presented in *Fisher*.  (CR16.)

10

or failure to warn were preempted by the FDCA. (ER84-90.) In light of FDA's investigation into the safety of caffeine in food products, including energy drinks, the district court applied the doctrine of primary jurisdiction to statements on the label, and to other allegations related to the failure to warn or adequately label Monster Energy® drinks in relation to caffeine content. (ER90-94.)[5]

## F. The City Attorney's Renewed Motion to Dismiss and the District Court's Order

On September 18, 2013, Judge Hamilton of the Northern District of California remanded the City Attorney's "state-court action" (*Herrera v. Monster Beverage Corporation*) to state court. (ER142.) On October 17, 2013, the City Attorney filed a renewed motion to dismiss under the *Younger* abstention doctrine. (CR55, 56.) He also argued, for the first time, that Plaintiffs' complaint should be dismissed under the Anti-Injunction Act. (CR56 at 13-18.)

On December 16, 2013, the district court granted the City Attorney's renewed motion to dismiss. (ER8.) It held that the complaint was barred by the *Younger* abstention doctrine and the Anti-Injunction Act. (*Id*). Plaintiffs timely appealed. (ER1.)

---

[5] The *Fisher* plaintiffs' appeal from the district court's decision is pending before this Court. *Fisher v. Monster Beverage Corporation et al.*, No. 13-57094.

### G. FDA's Ongoing Investigation into the Safety of Energy Drinks

As reflected in public documents of which the district court took judicial notice in ruling on the City Attorney's original motion to dismiss, in May 2013, FDA publicly announced its science-based evaluation of the safety of caffeine in food products, including energy drinks, particularly its effects on children and adolescents. (ER228-229.) Based on the outcome of that evaluation, FDA stated its intent to consider action with regard to "labeling of these products, such as requiring disclosure of the amount of caffeine in food products, limitations on intended use, or warnings." *See* Letter from Michele Mital, Acting Assistant Commissioner for Legislation for FDA, to U.S. Senator Richard J. Durbin, at p. 6 (Nov. 21, 2012), *available at* http://www.durbin.senate.gov/public/index.cfm/files/ serve?File_ id~60fccdd9-7e60-45d4-b529-4bf472cc6eee.

FDA subsequently contracted with the Institute of Medicine to conduct a public workshop to provide scientific input on dietary exposure considerations and any health hazards associated with energy drinks and other products containing caffeine. (ER231.) This workshop involved the FDA Commissioner and Deputy Commissioner for Foods, pharmacologists, psychologists, pediatric cardiologists, researchers, and others. *See* IOM, Workshop on Potential Health Hazards Associated with Consumption of Caffeine in Food and Dietary Supplements,

Agenda Book, *available at* http://www.iom.edu/~/media/Files/Activity%20Files/

Nutrition/PotentialEffectsofCaffeine/caffeineagendabook2.pdf. [6]

## LEGAL STANDARD

The Court reviews *de novo* the district court's grant of the City Attorney's

motion to dismiss under Rule 12(b)(6). *Steckman v. Hart Brewing, Inc.*, 143 F.3d

1293, 1295 (9th Cir. 1998); *Oscar v. Univ. Students Co-op. Ass'n*, 965 F.2d 783,

785 (9th Cir. 1992) (en banc). It must accept all factual allegations pleaded in a

---

[6] The investigation is ongoing. On January 17, 2014, the Institute issued a summary report of the workshop, and FDA announced that the Institute report "will be extremely informative as [the FDA] continue[s its] investigation of the safety of caffeine, particularly its effects on children and adolescents." *See* FDA Commissioner for Foods and Veterinary Medicine Michael R. Taylor's Statement on the Institute of Medicine Report on Caffeine in Food and Dietary Supplements (Jan. 14, 2014), *available at* http://www.fda.gov/NewsEvents/Newsroom/ PressAnnouncements/ucm382203.htm.

FDA has further stated in correspondence and filings with Congress that it is prioritizing the evaluation of the safety of energy drinks. On September 4, 2013, the Center for Food Safety and Applied Nutrition — the science-based, public health regulatory center in the FDA — stated that "develop[ing] policy/regulatory options for 'energy drinks'" is a priority for 2013-2014. *See* Center for Food Safety and Applied Nutrition Plan for Program Priorities, 2013-2014, *available at* http://www.fda.gov/AboutFDA/CentersOffices/OfficeofFoods/CFSAN/WhatWeD o/ucm366279.htm.

On March 13, 2014, the FDA Commissioner told Congress that FDA is addressing "concerns raised about the proliferation of caffeine uses in energy drinks, conventional foods, and dietary supplements, including products that are readily available and attractive to children," and that FDA is "working with the scientific community and the food industry to ensure that higher levels of caffeine added to new foods and marketed for new purposes meet the relevant safety standards and bear any labeling that may be appropriate to help ensure safe use." *See* FDA, Protecting the Public Health: Examining FDA's Initiatives and Priorities, *available at* http://www.fda.gov/NewsEvents/Testimony/ ucm389072.htm.

complaint as true, and construe them in the light most favorable to the Plaintiffs. *See N. Cnty. Cmty. Alliance, Inc. v. Salazar*, 573 F.3d 738, 741-42 (9th Cir. 2009).

The Court reviews a district court's *Younger* determination *de novo. See Readylink Healthcare, Inc. v. State Compensation Ins. Fund*, 754 F.3d 754, 758 (9th Cir. 2014). Whether a district court's injunction falls within the permissible limits of the Anti-Injunction Act is also a question of law reviewed *de novo. See Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 879 (9th Cir. 2000); *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 805-07 (9th Cir. 2002).

## ARGUMENT

## I. THE DISTRICT COURT ERRED IN APPLYING THE *YOUNGER* ABSTENTION DOCTRINE

Federal courts have a "virtually unflagging obligation" to exercise their jurisdiction and decide cases brought before them. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-18 (1976). As the Supreme Court recently emphasized, *Younger* abstention applies to only three classes of state proceedings: (1) state criminal prosecutions; (2) certain civil enforcement actions; and (3) civil proceedings in furtherance of a state court's ability to perform its judicial functions. *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013). In civil proceedings, *Younger* abstention is an "extraordinary and narrow exception" to the general rule that federal courts must exercise jurisdiction over

cases properly before them. *Potrero Hills Landfill, Inc. v. Cnty. of Solano*, 657 F.3d 876, 882 (9th Cir. 2011); *Benavidez v. Eu*, 34 F.3d 825, 831 (9th Cir. 1994).

Consistent with these principles, courts have recognized that *Younger* abstention is appropriate only in specific circumstances. *Younger* abstention requires an (1) ongoing state judicial proceeding that (2) implicates important state interests and (3) provides an adequate opportunity to raise federal claims, which (4) the federal court action would enjoin. *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1148-49 (9th Cir. 2007). The district court erred in finding that each of the four requirements was met here against both MBC *and* Monster Energy.

### A. There Was No Ongoing State Judicial Proceeding Against MBC *and* Monster Energy

#### 1. Monster Energy was not sued until after the district court ruled on *Younger*

Some sort of pending state judicial proceeding is required for *Younger* abstention. *See Steffel v. Thompson*, 415 U.S. 452, 462 (1976). This is because without an ongoing state-court proceeding, "federal intervention does not result in duplicative legal proceedings or disruption of the state [ ] system." *Id.*

The only defendant named in the City Attorney's state-court action was MBC. It was not until 16 months later — well after Plaintiffs filed this action, and indeed, 9 months after the judgment that is the subject of this appeal — that the City Attorney added Monster Energy and Doe Defendants in a Second Amended

Complaint filed in September 2014. (RJN Ex. D.) Because there was no ongoing state judicial proceeding against Monster Energy, it was error to apply *Younger* abstention to bar litigation of claims presented in federal court by Monster Energy.[7]

### 2. Proceedings of substance on the merits took place in federal court before the state-court action was remanded

The issue of Monster Energy aside, there was also no "ongoing" state proceeding against Plaintiffs under the principles of *Younger*.

In determining whether state-court proceedings are "ongoing" for purposes of *Younger* abstention, courts generally look to see if the state-court proceeding was pending when the federal complaint was filed. *See, e.g., Bettencourt v. Bd. of Registration in Med. of Mass.*, 904 F.2d 772, 777 (1st Cir. 1990). The Ninth Circuit, however, has held that *Younger* principles also apply when state

---

[7] While Plaintiffs did not specifically make this argument below, this Court can consider new legal arguments presented in response to claims previously raised in the litigation. *See Thompson v. Runnels*, 705 F.3d 1089, 1098 (9th Cir.) ("Once 'an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties.'"), *cert. denied*, 134 S. Ct. 234 (2013). This is particularly true where a new legal argument does not depend on development of a factual record. *See Weissburg v. Lancaster Sch. Dist.*, 591 F.3d 1255, 1259-60 n.3 (9th Cir. 2010) (where parties raised a claim for attorneys' fees, they "are free to make any argument in support of that claim on appeal"); *Fed. Ins. Co. v. Union Pac. R.R. Co.*, 651 F.3d 1175, 1178 (9th Cir. 2011) (considering new legal argument regarding covenant not to sue on appeal where it was based on undisputed facts). Here, the fact that Monster Energy was not sued until September 5, 2014, is not disputed, and does not depend on development of any additional facts.

proceedings are begun against federal plaintiffs after the federal complaint is filed, but before any "proceedings of substance on the merits" have taken place in the federal court. *Hoye v. City of Oakland*, 653 F.3d 835, 844 (9th Cir. 2011); *see also Hicks v. Miranda*, 422 U.S. 332, 349 (1975). On the other hand, if the federal proceedings have proceeded beyond the "embryonic" stage when state court proceedings are filed, considerations of economy, equity, and federalism generally preclude *Younger* abstention. *Hoye*, 653 F.3d at 844.

Here, the City Attorney argued that state proceedings were "ongoing" because his state-court action against MBC (alone) was filed a week after Plaintiffs commenced this action in federal court, and before any proceedings of substance on the merits had taken place. (ER14.) Not so. Where a state-court proceeding is removed to federal court and later remanded, as here, courts have considered whether "proceedings of substance on the merits" took place in federal court "prior to the order of remand." *Nevin v. Ferdon*, 413 F. Supp. 1043, 1049 (N.D. Cal. 1976).

By the time the City Attorney's state-court proceedings were remanded and once again "pending," the district court had already grappled with the main issues presented by this case three times over. To begin with, over the course of a year, the district court had twice considered MBC and Monster Energy's preemption and primary jurisdiction arguments in *Fisher*. (*See* ER14.) The district court

17

considered those arguments again in ruling on the City Attorney's original motion to dismiss. In deciding that motion, the district court analyzed in detail Plaintiffs' void for vagueness, First Amendment, preemption, primary jurisdiction, and Commerce Clause claims. (ER145.) In its 25-page order, the court evaluated each claim in depth — considering the papers filed (*id.*), the arguments put forth at the hearing (ER170), and all of the documents for which the parties requested judicial notice (ER148, 167) [relying on exhibits to the Complaint and judicially noticed documents for the primary jurisdiction analysis].)

While the contours of what defines "proceedings of substance on the merits" have yet to be established by the Supreme Court, courts have warned against defining the phrase too narrowly. *For Your Eyes Alone, Inc. v. City of Columbus*, 281 F.3d 1209, 1219 (11th Cir. 2002) ("we risk vesting the district attorney — not the aggrieved citizen — with the power to choose the forum, and, indeed, the nature of the proceeding in which the federal constitutional claim [will] be litigated") (citation omitted). In deciding how broadly or narrowly to define the phrase, courts have considered the costs of *Younger* abstention, especially in cases involving First Amendment claims where the doctrine may delay resolution of First Amendment issues. *Id.*[8] Ultimately, the question of what constitutes

---

[8] It is true that First Amendment concerns do not, in themselves, provide a federal court with justification for interfering with a pending state criminal proceeding. *Younger*, 401 U.S. at 51. But that proposition does not preclude

18

"proceedings of substance on the merits" is fact-specific and depends on costs driven by the facts. For example, courts have considered whether "briefs [have been] filed on the issues — that would suggest advancement toward a determination on the merits." *Ciotti v. County of Cook*, 712 F.2d 312, 314 (7th Cir. 1983).

The district court thus erred in finding that the first requirement of *Younger* was met. Because the federal action was beyond the "embryonic" stage when the City Attorney's case was remanded to state court, and the district court had ruled on the same issues twice in *Fisher*, considerations of economy, equity, and federalism precluded *Younger* abstention.[9] *See, e.g., Laclede Gas Co. v. St.*

---

courts from taking into account, in the First Amendment context, the costs of duplication and delay caused by *Younger* as the court calibrates how broadly or narrowly to define "proceedings of substance on the merits." *Younger* costs "are compounded the more the plaintiff (and the court) invest time and resources in the federal litigation, only to have the suit remitted to a newly-initiated . . . proceeding in state court, where the First Amendment claims must in effect be relitigated." *For Your Eyes Alone*, 281 F.3d at 1219.

[9] The fact that during the pendency of this appeal the state proceedings have now progressed is irrelevant to the *Younger* analysis on appeal. The relevant inquiry is based on the state of the proceedings at the time the district court ruled on the motion. *See M&A Gabaee v. Cmty. Redevelopment Agency of the City of L.A.*, 419 F.3d 1036, 1040 (9th Cir. 2005) (for purposes of *Younger* analysis, it "makes no difference what stage the state-court proceedings are at"); *Concord Communities, L.P. v. City of Concord*, No. 05-04094 JSW, 2006 WL 449135, at *2 (N.D. Cal. Feb. 23, 2006) (same); *FreeEats.com, Inc. v. State of Indiana*, 502 F.3d 590, 599 (7th Cir. 2007) (not proper to consider progress of state action in *Younger* abstention analysis); *Green v. Benden*, 281 F.3d 661, 666 (7th Cir. 2002) ("Whether the state action is still pending does not matter for our purposes . . . although as far as we know it is still pending.").

*Charles Cnty.*, 713 F.3d 413, 419 (8th Cir. 2013) (*Younger* abstention

inappropriate where nearly identical issues were addressed in a previous action, but

the party filed a state action rather than follow the prior ruling); *Cf. People v.

IntelliGender*, *LLC*, No. 13-56806, 2014 WL 5786718, at *7-10 (9th Cir.

Nov. 7, 2014) (district court properly enjoined the state's UCL action seeking

restitution where defendant previously settled a class action suit that was based on

the same conduct, and that included consumer restitution).

### B.    No Uniquely Important State Interests Were Implicated

The district court also erred in finding that the City Attorney's state-court

action implicated important state interests.  The second requirement of *Younger*

abstention is satisfied when "the State's interests in the [ongoing] proceeding are

so important that exercise of the federal judicial power would disregard the comity

between the States and the National Government."  *AmerisourceBergen*, 495 F.3d

at 1149-50 (citing *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11 (1987).)  The goal

of *Younger* abstention is to "avoid federal court interference with *uniquely* state

interests such as preservation of these states' peculiar statutes, schemes, and

procedures."  *Id.* at 1150.

Here, the City Attorney urged the district court not to "look narrowly" at the

state's interest in this particular action, but instead to consider the importance of

the "generic proceedings" in determining the state's interest.  (CR56 at 5.)  The

district court, however, had no option but to "look narrowly." Nothing about the City Attorney's lawsuit is "generic." He has not broadly sued every energy drink manufacturer; he has singled out Monster Energy® drinks. (*See* ER256 [¶ 3] ("Defendant has singled out Plaintiffs, though their competitors follow a similar advertising and marketing strategy, use comparable product labels, and sell energy drinks that contain the same supposedly offending ingredient (caffeine) at levels equal to, and in some cases higher than, Plaintiffs' energy drinks").) In contrast, FDA is conducting a comprehensive evaluation of the safety of all types of caffeinated foods. (*See* ER231.)

Courts refuse to find an "important state interest" in cases involving individual applications of state laws because they have no "significance broadly." *Baffert v. Cal. Horse Racing Bd*., 332 F.3d 613, 617-18 (9th Cir. 2003); *see also Turner v. Smith*, No. C 11-05176 CRB, 2012 WL 6019103, at *7 (N.D. Cal. Dec. 3, 2012) (refusing to apply *Younger* in a lawsuit implicating "only an individual application of [state] laws, and not the ability of the state to enforce and administer its scheme generally"); *Huey v. City & Cnty. of S.F.*, No. C-07-02266 EDL, 2007 WL 2790294, at *3 (N.D. Cal. Sept. 20, 2007) (same).

The City Attorney disagreed, arguing that his claims against MBC implicated three important state interests: (1) protecting residents from unsafe and mislabeled foods, and relatedly from unfair and misleading marketing practices;

(2) protecting consumers from unfair and deceptive business practices, and providing proper compensation for such practices; and (3) enforcing the state's own laws.  (CR56 at 5-6.)  None of these purported state interests is "so important that exercise of the federal judicial power would disregard the comity between the States and the National Government."  The City Attorney's purported state interests all stem from an enforcement proceeding that selectively targeted MBC[10] and is preempted, clearly subject to FDA's primary jurisdiction, and unconstitutional.  Moreover, the central issue underlying the City Attorney's claims — caffeine safety— is one that is being addressed (and should be addressed) at the federal level.  Energy drinks — made by Monster Energy and its competitors, including Red Bull and Rockstar — are sold extensively nationwide.

### 1. No state interest is served where the state action is preempted

There is no dispute that *Younger* abstention is inappropriate where a claim of preemption is readily apparent.  (CR56 at 10-11); *see also Gartrell Constr., Inc. v. Aubry*, 940 F.2d 437, 441 (9th Cir. 1991); *Baggett v. Dep't of Prof'l Regulation*, 717 F.2d 521, 524 (11th Cir. 1983).  The district court erred in abstaining, given its previous finding that some of the City Attorney's claims were expressly preempted.

---

[10] Monster Energy is not even the largest seller of energy drinks in the City Attorney's jurisdiction; two competitors have a larger presence.

### a. The FDCA's express preemption provision applied

In ruling on the City Attorney's original motion to dismiss, the district court found that the demands in the City Attorney's March 29, 2013 letter were expressly preempted by the FDCA, as adopted in the Nutrition Labeling and Education Act ("NLEA"). (ER165.) The court explained that a state-law claim imposes a "not identical" requirement if it "imposes obligations or contains provisions . . . [that a]re not imposed by or contained in the applicable provision [or regulation.]" (ER164 (citing 21 C.F.R. § 100.1(c)(4)).) It found that the City Attorney "seeks to impose *more than required by the FDA*." (ER165)[11]

Despite this prior ruling, the district court found that for purposes of *Younger* abstention, it was not "readily apparent" that the City Attorney's "entire State Action is expressly preempted." (ER21.) Specifically, it held that the City Attorney's claims that MBC "markets its products with unsubstantiated claims about the effects of certain ingredients, such as taurine, guarana, ginseng,

---

[11] The district court specifically held: the City Attorney "seeks to impose an obligation to post certain warnings that are not imposed by the FDA" (ER165 [citing 21 C.F.R. § 101.17]); the City Attorney seeks to require MBC to "post certain labels on its energy drinks regarding the amount of caffeine they contain" that are not required by FDA (ER 165-166 [citing 21 U.S.C. § 343(q)]); "FDA does not require the disclosures that [the City Attorney] seeks to impose on Monster" (ER166); and the City Attorney's "demand to reformulate the energy drinks to lower the caffeine content is also not an obligation imposed by the FDA." (*Id.*)

glucuronolactone, and B-vitamins" were not expressly preempted.  (*Id.*)  The court's ruling was wrong for two reasons.

First, as discussed in Section I.B.2 below, the important state interest requirement is not met where federal interests are paramount and outweigh the purported state interests.  Here, the gravamen of the City Attorney's state-court claims is that Monster Energy® drinks are not safe under FDA's GRAS regulations.  (ER256 ¶ 1).)  Indeed, all of the City Attorney's claims hinge on the safety of Monster Energy® drinks.  (*See* ER105 [¶ 8], 109 [¶ 27], 111-112 [¶ 34], 117-118 [¶¶ 44-45], 118-119 [¶¶ 48-49], 123 ¶ 62.)[12]  This issue is squarely within

---

[12] All six of the claims set forth in the City Attorney's state court complaint rest on whether Monster Energy® drinks are safe:

(1) **Misbranding/Mislabeling Its Energy Drinks as Dietary Supplements:** "By *labeling* itself as a dietary supplement, Monster sought to evade the ***safety standards*** that apply to food and beverage additives."  (ER105 [¶ 8] (emphasis added).)

(2) **Selling Adulterated Products**:  "The levels of added caffeine in Monster Energy Drinks ***do not satisfy the GRAS standard*** because there is no scientific consensus concerning the *safety* of the caffeine levels in the products."  (ER109 ¶ 27 (emphasis added).)

(3) **Selling Products with Misleading and Inadequate Warning Labels**.  "Monster is well aware that its drinks pose serious ***health risks*** to children… Despite the warning *label*, and the *safety* concerns about Monster Energy Drinks for children and adolescents, Monster aggressively markets its products to youth."  (ER111 [¶ 34] (emphasis added).)

(4) **Marketing Its Products to Children and Adolescents Who Cannot *Safely* Consume Them**.  "These marketing practices constitute unfair and

the jurisdiction of FDA, as demonstrated by the agency's current investigation into the safety of food products containing caffeine, including energy drinks. (ER228-229.) As such, this is an issue that should be decided uniformly at the federal level, rather than by the City Attorney of San Francisco. The district court should have weighed this overwhelming federal interest against application of *Younger* abstention. (*See* Section I.B.2.)[13] To do otherwise runs counter to Congress's intent in enacting the FDCA.

---

misleading business practice given the **health risk** that energy drinks pose . . . Monster [deceives] reasonable consumers into believing that Monster Energy Drinks can be **safely consumed** in large quantities and **safely consumed** while engaging in strenuous physical activity." (ER117-118 [¶¶ 44-45] (emphasis added).)

(5) **Using Drug and Alcohol References to Market Its Products**. "Monster has failed to adequately warn consumers about the **health consequences** of consuming its beverages . . . Monster also markets its drinks with references to alcohol . . . [despite the fact that the combination] is **unsafe** and poses **serious health risks**." (ER118, 119 [¶¶ 45, 48-49] (emphasis added).)

(6) **Making Unsubstantiated Claims About the Purported Benefits of the "Energy Blend" Its Products Contain**. While the City Attorney does not make the connection explicit, issues of efficacy are intricately bound up with issues of **safety** and **labeling** under federal law. Claims about the efficacy of contents of the energy blend are lawful claims under the FDCA and the Dietary Supplement Health and Education Act ("DSHEA"). (ER123 [¶ 162] (emphasis added).)

[13] The district court acknowledged the questionable nature of the state's paramount interest in this case when it asked the City Attorney during oral argument: "[If] the majority of the claims here are preempted, and there's only one that is not, [ ] can you really argue that the state interest is paramount?" (ER34 at 6:15-18.)

<u>Second</u>, even under the district court's rationale, the proper action was to abstain only as to those specific claims that were not expressly preempted. *See, e.g., Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 305-06 (1979) (holding the district court should have partially abstained, and proceeded to the merits on some claims); *Red Bluff Drive-In, Inc. v. Vance*, 648 F.2d 1020, 1025 n.3 (5th Cir. 1981) (reversing abstention in part and ordering partial abstention of claims); *see also Perlberger v. Perlberger*, No. 97-4105, 1998 WL 472657, at *5 (E.D. Pa. Aug. 13, 1998) (ordering partial abstention); *Bluehippo Funding LLC v. McGraw*, No. 2:07-0399, 2007 WL 6216559 (S.D.W. Va. Oct. 25, 2007) (same). The district court had no basis for abstaining as to all claims (and as to both MBC *and* Monster Energy), particularly where it had already held that some of the City Attorney's demands were expressly preempted.

### b. The state action is impliedly preempted by the FDCA

The district court also erred in finding that it was not "readily apparent" that the City Attorney's state-court claims were impliedly preempted. (ER22.) As discussed above, the "direct and essential" question presented by the City Attorney's complaint is whether the caffeine level in Monster Energy® drinks is GRAS. (ER103 [¶ 1].) GRAS, by definition, is an exclusively federal notion, governed by FDA regulations. Without proving that Monster Energy® drinks are unsafe, the City Attorney will not be able to prevail on the majority of his claims.

26

(ER105 [¶ 8], 109 [¶ 27], 117-118 [¶¶ 44-45].)  Yet, in order to prove that those drinks are unsafe, he must rely on FDA's GRAS regulations.  His enforcement action, therefore, necessarily depends on FDA regulations.

The City Attorney seeks to use the Sherman Law indirectly to enforce the FDCA.  This he cannot do.  The Sherman Law simply adopts the FDCA.  A state law claim does not exist where it is "in substance (even if not in form) a claim for violating the FDCA — that is, when the state law claim would not exist if the FDCA did not exist."  *Riley v. Cordis Corp.*, 625 F. Supp. 2d 769, 777 (D. Minn. 2009) (citing *Buckman Co. v. Pls.' Legal Comm.*, 531 U.S. 341, 352-53 (2001)).  This is true even where courts have allowed states to enforce state laws that incorporate federal food safety and marketing requirements.  The Ninth Circuit has instructed that this may occur only in a limited instance: "the plaintiff must be suing for conduct that violates the FDCA (or else his claim is expressly preempted . . .), but the plaintiff must not be suing *because* the conduct violates the FDCA (such a claim would be impliedly preempted . . .)."  *Perez v. Nidek Co.*, 711 F.3d 1109, 1120 (9th Cir. 2013) (citing *In re Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig.*, 623 F.3d 1200, 1204 (8th Cir. 2010)).  In other words, preemption could be avoided only if the City Attorney's complaint was based on a preexisting state-law duty — not FDA's GRAS requirement.

Just as it found with regard to express preemption, the district court found that the City Attorney's "entire State Action does not hinge on the safety of caffeine in Monster Drinks under the GRAS standard." (ER21-22.) Again, the district court pointed to the City Attorney's claims that MBC markets energy drinks with unsubstantiated claims about the effects of specific ingredients. (*Id.*) The district court held that even if it were to assume "that the City Attorney's claim that the amount of caffeine in Monster Drinks violates GRAS is impliedly preempted, it is not 'readily apparent' that the entire State Action is impliedly preempted." (ER22.) This was error for the same reasons discussed with regard to express preemption: the gravamen of the City Attorney's claims is that Monster Energy® drinks are not GRAS under federal standards, and even if the district court found one of the City Attorney's claims were not preempted, abstention as to all claims was improper. (*See* Section I.B.1.a.)

### 2. No overriding state interest is served when federal interests outweigh state interests

Courts have also refused to abstain under *Younger* where federal interests outweigh state interests. *See, e.g., Fort Belknap Indian Cmty. v. Mazurek*, 43 F.3d 428, 432 n.3 (9th Cir. 1994) ("when a state court is asked to decide issues of federal law in an area in which federal interests predominate, the State's interest in the litigation is in our view not important enough to warrant *Younger* abstention") (citation omitted); *McCartney ex rel. McCartney v. Cansler*, 608 F. Supp. 2d 694,

703-04 (E.D.N.C. 2009) (same), *aff'd sub nom. D.T.M. v. Cansler*, 382 F. App'x 334 (4th Cir. 2010).

Here, federal interests in the uniform application of food safety and labeling laws outweighed the City Attorney's interest in regulating locally in his hometown of San Francisco. Indeed, "the FDCA establishes a uniform federal scheme of food regulation to ensure that food is labeled in a manner that does not mislead consumers." (ER167.) Determination of safety standards for energy drinks has national significance, and the City Attorney's effort to create a San Francisco-only rule would impact FDA's ongoing investigation and studies into the safety of caffeinated beverages nationally. Thus, federal policy is not advanced, but rather hindered, by the City Attorney's actions — a policy the district court recognized as paramount when it found that FDA has a unique interest in, and "special competence" over, the matters at issue in this case. (*Id.*) Indeed, FDA has repeatedly confirmed not only that this is an important federal issue, but that "develop[ing] policy/regulatory options for 'energy drinks'" is one of its ***main priorities***. *See* Center for Food Safety and Applied Nutrition Plan for Program Priorities, 2013-2014, *available at* http://www.fda.gov/ AboutFDA/CentersOffices/ OfficeofFoods/CFSAN/WhatWeDo/ucm366279.htm.

What's more, the district court had earlier granted MBC and Monster Energy's motion to dismiss in *Fisher* on primary jurisdiction grounds based on

29

nearly identical facts. (ER90-94) (finding the claims about safety, labeling, and failure to warn are preempted and barred by the FDA's primary jurisdiction.) Other courts faced with the same issue have dismissed or stayed proceedings in deference to FDA's food safety expertise. *See Aaronson v. Vital Pharm., Inc.*, No. 09-CV-1333 W(CAB), 2010 WL 625337 (S.D. Cal. Feb. 17, 2010) (dismissing challenge to safety of energy drinks based on primary jurisdiction); *Zuckman v. Monster Beverage Corp.*, No. 2012 CA 8653 (D.C. Super. Ct. June 12, 2014) (staying parallel action against MBC on primary jurisdiction grounds).

Here, the district court erred by failing to consider the strong federal interest in national food safety and labeling laws. Instead, it stated that it was "not persuaded that it needs to engage in a weighing of federal versus state interests, aside from the preemption question, in deciding whether an important state interest exists for the purposes of *Younger* abstention." (ER18.) This was error. Courts have held that *Younger* abstention would be unjustified where there is an "overwhelming" federal interest that outweighs the comity principles underlying *Younger* abstention. *See, e.g., Harper v. Pub. Serv. Comm'n*, 396 F.3d 348, 356 (4th Cir. 2005) ("Where there is an overwhelming federal interest . . . no state interest, for abstention purposes can be nearly as strong at the same time"); *Life Partners, Inc. v. Morrison*, 484 F.3d 284, 300 (4th Cir. 2007) (same); *New York by Abrams v. Trans World Airlines, Inc.*, 728 F. Supp. 162, 174-75 (S.D.N.Y. 1989)

(state interest in enforcing false advertising laws against airlines insufficient to justify *Younger* abstention in light of the fact that the "regulation of airline advertising is an area in which both the state and the federal government actively operate"); *Bluehippo*, 2007 WL 6216559, at *8 ("it is incumbent upon the federal court to weigh on the scales not only the state interest involved in a particular case but also the federal interest that might outbalance it in a given case").

Accordingly, the overwhelming federal interest in the safety of caffeine in food products, including energy drinks — as communicated by FDA itself — outweighed any parallel state interest. The district court erred in holding otherwise, and its ruling threatens the primacy of FDA's jurisdiction over food labeling and safety.

### C. While State-Court Proceedings Are Adequate to Raise Federal Claims, Such Claims Had Already Been Raised and Addressed Here

The third *Younger* factor is whether an adequate opportunity exists to raise the plaintiff's constitutional claims in state proceedings. *Younger v. Harris*, 401 U.S. 37, 45 (1971). The City Attorney argued that the state court is competent to hear Plaintiffs' arguments, and the district court agreed. (ER22.) The issue, however, is not the competence of state courts. Energy drink safety falls within the jurisdiction of FDA (as the City Attorney had acknowledged when he contacted FDA in March 2013, before filing his state-court action), and the district court had

already grappled extensively with Plaintiffs' preemption and primary jurisdiction arguments. (*See* Section I.B., *supra*.) There was no just cause requiring abstention. Any potential for conflicting court action is a conflict created by the City Attorney himself: he could have easily litigated his claims in federal court (or waited for FDA to complete the investigation the City Attorney had asked it to undertake). The *Younger* abstention doctrine was not intended to permit parties to avoid litigating federal issues in federal court simply by filing a parallel suit in state court.

For these reasons, the district court erred in finding the third factor weighed in favor of abstention.

### D.    This Action Would Not Have Interfered with State Proceedings

The district court similarly erred in finding that the relief that MBC and Monster Energy sought in this action would interfere with state-court proceedings. (ER22-23.)

First, there were no state proceedings pending against Monster Energy, and thus it was error to conclude that adjudicating Monster Energy's claims in federal court would interfere with state-court proceedings.

Second, MBC and Monster Energy sought to enjoin the City Attorney from pursuing remedies outside the scope of his authority, not from generally enforcing the UCL. (ER282 [¶ 2].) Specifically, Plaintiffs sought a declaration that the City

32

Attorney's demands (*e.g.*, reformulation, relabeling, and further warnings) were preempted, subject to the doctrine of primary jurisdiction, and unconstitutional. (ER282 [¶ 1].)  To the extent the City Attorney could state a claim for relief in state court based on claims properly within his authority — such as his claim that MBC markets energy drinks with unsubstantiated claims about the purported benefits of their ingredients — this action would not affect that claim.

Moreover, the City Attorney has it backward.  It is *his* action that interfered with ongoing federal interests .  The district court had already found that "[f]ood labeling enforcement is a matter that Congress has indicated requires the FDA's expertise and uniformity in administration."  (ER167.)  The court had expressly concluded that "whether Monster's energy drinks contain an unsafe amount of caffeine is a question the FDA has taken an interest in investigating and resolving." (*Id.*)  It also found that "whether Monster should be allowed to advertise and label its products in a way that appeals to a younger demographic . . . are policy questions that are best resolved by a regulatory authority."  (*Id*.)  And as discussed, it already had found some of the City Attorney's demands were preempted.  (*See* Section I.B.1.)  Further, the City Attorney himself acknowledged FDA's exclusive jurisdiction in this area when he specifically asked the agency to commence an investigation.  (ER270 [¶ 48].)

This action also would not have interfered with state proceedings because ultimately neither the district court nor the state court should decide the issue posed by the City Attorney's demands on the merits. Only FDA is equipped to do that. *See Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 426 (7th Cir. 2011) ("Congress would not want to allow states to impose disclosure requirements of their own on packaged food products, most of which are sold nationwide"). And FDA action in this area will affect energy drinks sold in all 50 states.

## II. THE DISTRICT COURT IMPROPERLY FOUND THAT THIS CASE WAS BARRED BY THE ANTI-INJUNCTION ACT

### A. The City Attorney's Anti-Injunction Act Argument Was Untimely and Barred

Federal Rule of Civil Procedure 12(g) bars a party from raising a defense or objection in a subsequent Rule 12 motion that was available, but omitted, in an earlier Rule 12 motion. *See* Fed. R. Civ. P. 12(g). The City Attorney could have raised his Anti-Injunction Act argument earlier. Because he did not, the district court should not have considered it for the first time in his renewed motion to dismiss.

Moreover, none of the limited exceptions to this rule applied.[14] While jurisdictional defenses can be raised at any time, that exception did not apply here

---

[14] The exceptions to Rule 12(g) are set forth in Rules 12(h)(2) and (3). Pursuant to Rule 12(h)(2), legal defenses to a claim may be raised: (a) in any pleading allowed or ordered under Rule 7(a); (b) by a motion under Rule 12(c); or (c) at

because the City Attorney was not raising a jurisdictional defense. *See* Fed. R. Civ. P. 12(h)(3). The Anti-Injunction Act "does not negate federal subject matter jurisdiction"; it "merely limits the equitable powers available to the Court." *See Bank One Del., NA v. Wilens*, No. SACV 03-274-JVS ANx, 2003 WL 21703627, at *1 n.1 (C.D. Cal. June 13, 2003); *Int'l Longshoremen's & Warehousemen's Union v. Ackerman*, 82 F. Supp. 65, 107 (D. Haw. 1948) ("It is clear that the doctrine of abstention from action by injunction by a federal court to restrain proceedings in State court[,] embodied in [28 U.S.C.] § 2283 . . . does not go to the jurisdiction of the federal tribunal but is instead a rule of comity in the form of positive law.").

Moreover, the City Attorney's untimely Anti-Injunction Act argument did not fall within Rule 12(b)(6)'s allowance for legal defenses that can be raised later. Those circumstances, set forth in Rule 12(h)(2), are limited to "pleading[s] allowed or ordered under Rule 7(a), by a motion under Rule 12(c), or at trial." *See* Fed. R. Civ. P. 12(h)(2). A motion to dismiss is not a "pleading" within the meaning of Rule 7(a). *Miles v. Dep't of Army*, 881 F.2d 777, 781 (9th Cir. 1988).[15] Because

---

trial. Rule 12(h)(3) permits a court to dismiss an action at any time if it determines that it lacks subject matter jurisdiction.

[15] Nor could the district court decide this motion pursuant to Rule 12(c), as a motion for judgment on the pleadings. A Rule 12(c) motion is available to a party only when the pleadings are closed. *Id*. The pleadings remained open because the

he did not raise this defense in a manner authorized by Rule 12(h)(2), he was barred from doing so in his renewed motion to dismiss. *See id.*, at \*5 ("if a party makes a preliminary motion under Rule 12 and fails to include one of the Rule 12(h)(2) objections . . . that party may not assert the defense by a second pre-answer motion") (citations omitted); *Overton v. Wyeth, Inc.*, No. CA 10-0491-KD-C, 2011 WL 1343392, at \*3 (S.D. Ala. Mar. 15, 2011). There was no new matter that did not exist when the City Attorney filed his original motion to dismiss that would give rise to the Anti-Injunction Act defense in his renewed motion. *See E. & J. Gallo Winery v. Encana Energy Servs., Inc.*, 388 F. Supp. 2d 1148, 1163 (E.D. Cal. 2005) (rejecting defendants' claim that first amended complaint revived their ability to assert new arguments, where the basis for those arguments was "obvious from the beginning").

The district court acknowledged that the City Attorney's Anti-Injunction Act argument was untimely:

> The City Attorney contends that the Anti-Injunction Act defense was not available at the time he filed the first motion to dismiss because on the same day the motion was filed, the State Action was removed to federal court, making the Act inapplicable. The Court notes this position is inconsistent with the fact that the City Attorney filed his MTD in the morning, before the action was removed.

---

City Attorney had not yet filed an answer. Moreover, this defense was waived, as discussed above.

(ER24.)  The court, however, still considered the argument for two reasons, both of which were error.

First, the court held that it could not have considered the application of the Act even if it had been raised in the initial motion to dismiss, since the state-court action had been removed by the time of the hearing on that motion.  (ER24.)  The same is true, however, for the *Younger* abstention doctrine.  In ruling on the City Attorney's original motion to dismiss, the district court declined to apply the doctrine, and stated that it would revisit the issue in the event that the state-court action was remanded.  (ER158.)  The City Attorney could have preserved the Anti-Injunction Act argument for later motion in the same fashion.

Second, the district court held that even though the Anti-Injunction Act does not affect federal subject matter jurisdiction, it would have prohibited a federal court injunction under the terms of the Act regardless of whether the objection was raised.  (ER28.)  This was error because the relief Plaintiffs sought was not prohibited by the Act, as discussed below.  (*See* Section II.B.)

## B. Even if Not Barred, Plaintiffs Did Not Seek Relief Prohibited by the Anti-Injunction Act

Even if the City Attorney had properly raised the Anti-Injunction Act argument, it would have failed because the relief sought by Plaintiffs fell outside the purview of the Act.

37

First, the Anti-Injunction Act does not apply to an injunction that prohibits the initiation of a state-court proceeding. *Dombrowski v. Pfister*, 380 U.S. 479, 484 n.2 (1965). In other words, the Act does not apply when the federal complaint seeking injunctive relief is filed before the state-court proceeding commences. *Bank One*, 2003 WL 21703627, at *2-3 (citing *Dombrowski*, 380 U.S. at 484 n.2). Even a concrete and immediate threat of prosecution is not a "proceeding" for purposes of the Act. *Id*.

Because the City Attorney did not file his state-court proceeding against MBC until after MBC and Monster Energy had filed this action (and did not sue Monster Energy for another 16 months), the Act did not apply against either Plaintiff. *Bank One Delaware, NA v. Wilens* is instructive. There, the court explained that "the essential issue for the application of the Act is timing." *Id.*, at *2. It noted that the plaintiff's federal suit was filed before the defendant included plaintiff as a defendant in the state-court suit. *Id*. The *Bank One* court concluded that the Anti-Injunction Act did not apply because plaintiff "first sought injunctive relief at the filing of its complaint" and because it "filed its lawsuit seeking injunctive relief prior to [defendant's] suit [in state court]." *Id*.[16]

---

[16] *See also Palo Alto Tenants Union v. Morgan*, 321 F. Supp. 908, 910 (N.D. Cal. 1970) (rejecting the Anti-Injunction Act argument where "at the time of the complaint herein, no criminal proceeding had been instituted against the named plaintiffs"), *aff'd*, 487 F.2d 883 (9th Cir. 1973); *Barancik v. Investors Funding Corp.*, 489 F.2d 933, 936 (2d Cir. 1973) ("the applicability of the statute may be

Here, the district court found that there was a circuit split on the timing issue, and sided with the cases finding that the Anti-Injunction Act applied even where the state-court action commences after the federal action. (ER25-26.)[17] This was wrong. As the Seventh Circuit explained in *Barancik*: "unless the applicability of the statutory bar is determined by the state of the record at the time the motion for an injunction is made, a litigant would have an absolute right to defeat a well-founded motion by taking the very step the federal court was being urged to enjoin." *Barancik*, 489 F.2d at 937. That reasoning applies with equal force here, where federal interests in uniform food labeling and safety outweigh any state interests, and principles of comity are not served by deferring to the state-court action. This is especially true with regard to Monster Energy, which was not

---

avoided by the timing of defendants' resort to the state forum"); *Nat'l City Lines, Inc. v. LLC Corp.*, 687 F.2d 1122, 1127-28 n.9 (8th Cir. 1982) (holding that the date on which the controversy will be deemed joined in federal court is the date "on which injunctive relief was first sought"); *Philip Morris Inc. v. Harshbarger*, 946 F. Supp. 1067, 1074 (D. Mass. 1996) (holding that the Act does not apply when the federal court's injunctive power has been sought through filing prior to commencement of the state action).

[17] The district court relied on *Denny's, Inc. v. Cake*, 364 F.3d 521, 529-32 (4th Cir. 2004) in finding that the Anti-Injunction Act applied. (ER25-26.) In *Denny's*, the Fourth Circuit held that the policy concerns cited in *Barancik*, 489 F.2d 933, would be better addressed through the use of temporary restraining orders enjoining the initiation of the state court proceeding. *Denny's*, 364 F.3d at 530-31. The district court found this reasoning persuasive, citing principles of equity, comity, and federalism. As discussed herein, this was error because these principles weigh the other way — in favor of ruling on the merits of Plaintiffs' claims.

a party to the state-court action when the district court considered the City Attorney's renewed motion to dismiss.

Second, contrary to the City Attorney's urgings, the Anti-Injunction Act did not prevent Plaintiffs from obtaining the declaratory relief they separately sought. The Act "explicitly prohibits only injunctions." *Thiokol Chem. Corp. v. Burlington Indus., Inc.*, 448 F.2d 1328, 1332 (3d Cir. 1971). In general, "a federal district court has the duty to decide the appropriateness and the merits of the declaratory request irrespective of its conclusion as to the propriety of the issuance of the injunction." *Zwickler v. Koota*, 389 U.S. 241, 254 (1967). The City Attorney argued that the Anti-Injunction Act bars declaratory judgments if those judgments have the same effect as an injunction. (CR56 at 14.) The declaratory relief sought here, however, would not have the same effect as the type of injunction prohibited by the Anti-Injunction Act.

Unlike the cases cited by the City Attorney, Plaintiffs did not seek a declaration that federal law entirely preempts the state law (Section 17200, the UCL) under which the City Attorney had sued MBC. Rather, Plaintiffs sought a declaration that the City Attorney's demands — his expansive and unprecedented view of the scope of his authority under Section 17200 — were preempted. Under the Anti-Injunction Act, a federal suit is not barred merely because the eventual holding might be *res judicata* on parties litigating the same issue in state court.

40

*Cnty. of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 197-98 (1959).

Moreover, the district court made no effort to consider whether a partial bar of

certain state-court claims would have been appropriate.

Finally, dismissal here did not serve the purposes of the Anti-Injunction Act.

The basic purpose of the Act is to avoid "unseemly conflict between the state and

the federal courts." *Nat'l Labor Relations Bd. v. Nash-Finch Co.*, 404 U.S. 138,

146 (1971). The Act is based on notions of comity and an underlying policy of

preserving the independence of a state's judicial system. *Mitchum v. Foster*, 407

U.S. 225 (1972). No unseemly conflict existed here (and, if it did, it was created

entirely by the City Attorney himself). (*See* Section I.C.)

## C. Plaintiffs' Section 1983 Claim Fell Within an Established Exception to the Anti-Injunction Act

The Supreme Court has recognized that "[section] 1983 is an Act of

Congress that falls within the 'expressly authorized' exception to the [Anti-

Injunction Act]." *Mitchum*, 407 U.S. at 242-43; *see also Anderson v. Nemetz*, 474

F.2d 814, 818 (9th Cir. 1973) ("[T]he Civil Rights Act, 42 U.S.C. § 1983, falls

within the express exception to the federal anti-injunction statute, 28 U.S.C.

§ 2283"). Indeed, "the very purpose of § 1983 was to interpose the federal courts

41

between the States and the people . . . to protect the people from unconstitutional action under color of state law." *Mitchum*, 407 U.S. at 242.[18]

The City Attorney argued that the Anti-Injunction Act's clearly established exception for Section 1983 claims only applies where the state courts are themselves violating a party's constitutional rights. (CR56 at 16-17.) Not so. Federal courts apply the exception where underlying threatened state action is unconstitutional, without asking whether the state court itself will uphold the Constitution. *See, e.g., Anderson*, 474 F.2d at 818 (finding Anti-Injunction Act inapplicable to an action brought under 42 U.S.C. § 1983 to challenge the constitutionality of a state statute); *Hidalgo v. New York*, No. 11-CV-5074(JS)(ARL), 2011 WL 5838494, at *1 (E.D.N.Y. Nov. 21, 2011) (same).

The district court held that Plaintiffs' Section 1983 claim did not fall within the "expressly authorized" exception to the Anti-Injunction Act because "[g]iven the nature of Monster's alleged constitutional violation, the Court finds that the principles of comity, equity, and federalism weigh in favor of the Court refraining from granting injunctive relief that would effectively enjoin the state proceeding." (ER28.) For the reasons discussed herein, the principles of comity, equity and

---

[18] Moreover, the Supreme Court has repeatedly held that injunctions of state officials may be authorized where the officials "threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992); *see also Ex parte Young*, 209 U.S. 123, 155-56 (1908).

federalism weigh the other way — in favor of ruling on the merits of Plaintiffs' claims.

## CONCLUSION

For the foregoing reasons, the district court's grant of the City Attorney's motion to dismiss should be reversed.

Dated: November 28, 2014       MORRISON & FOERSTER LLP

By: /s/ Dan Marmalefsky

Dan Marmalefsky

*Attorneys for Plaintiffs-Appellants*
*Monster Beverage Corporation*
*and Monster Energy Company*

## STATEMENT OF RELATED CASES

Pursuant to Rule 28-2.6 of the Ninth Circuit, Plaintiffs-Appellants' Monster Beverage Corporation and Monster Energy Company state that *Fisher v. Monster Beverage Corporation*, No. 13-57094, currently pending before this Court, is related. That case addresses, in part, whether preemption or the doctrine of primary jurisdiction apply to claims concerning the safety of Monster Energy® drinks.

Dated: November 28, 2014      MORRISON & FOERSTER LLP

By: /s/ Dan Marmalefsky
     Dan Marmalefsky

*Attorneys for Plaintiffs-Appellants*
*Monster Beverage Corporation*
*and Monster Energy Company*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure and Rule 32-1 of the Ninth Circuit, Plaintiffs-Appellants Monster Beverage Corporation and Monster Energy Company hereby certify that the typeface in the attached brief is proportionately spaced and 14 points or more and that the word count for the portions subject to the restrictions of Rule 32(a)(7)(B)(iii) is 10,411.

Dated: November 28, 2014          MORRISON & FOERSTER LLP

                                  By: /s/ Dan Marmalefsky
                                       Dan Marmalefsky

                                  *Attorneys for Plaintiffs-Appellants*
                                  *Monster Beverage Corporation*
                                  *and Monster Energy Company*

## CERTIFICATE OF SERVICE

I hereby certify that on November 28, 2014, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. All participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.


Dated: November 28, 2014       MORRISON & FOERSTER LLP

By: /s/ Dan Marmalefsky
      Dan Marmalefsky

*Attorneys for Plaintiffs-Appellants*
*Monster Beverage Corporation*
*and Monster Energy Company*

sf-3465306

1