Court of Appeals No. 13-57128

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MONSTER BEVERAGE CORPORATION, a Delaware corporation; and
MONSTER ENERGY COMPANY, a Delaware corporation,
*Plaintiffs-Appellants*,

v.

DENNIS HERRERA, in his official capacity as
City Attorney of San Francisco,
*Defendant-Appellee.*

On Appeal from the United States District Court, Central District of California
The Honorable Virginia A. Phillips, Judge Presiding
(Case No. 5:13-cv-00786-VAP-OP)

**APPELLANTS' REPLY BRIEF**

<div style="display:flex">

**MORRISON & FOERSTER LLP**
James J. Brosnahan (SBN 34555)
William L. Stern (SBN 96105)
Claudia M. Vetesi (SBN 233485)
425 Market Street
San Francisco, CA 94105-2482
Telephone: 415.268.7000

**MORRISON & FOERSTER LLP**
Dan Marmalefsky (SBN 95477)
Purvi G. Patel (SBN 270702)
707 Wilshire Blvd., Suite 6000
Los Angeles, CA 90017-3543
Telephone: 213.892.5200

</div>

*Attorneys for Plaintiffs-Appellants*
Monster Beverage Corporation and Monster Energy Company

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................ iii

INTRODUCTION ............................................................................1

I.  THE DISTRICT COURT ERRED IN APPLYING THE *YOUNGER* ABSTENTION DOCTRINE .......................................................3

    A.  There Was No Ongoing State Judicial Proceeding Against *Both* MBC *and* Monster Energy ...........................................4

        1.  Monster Energy was not sued in state court until nearly a year after the district court abstained under *Younger* ...............4

        2.  Proceedings of substance on the merits took place in federal court before the state-court action was remanded ........6

    B.  No Uniquely Important State Interests Were Implicated....................8

        1.  No state interest is served where the state action is preempted....................................................................12

        2.  The state action is impliedly preempted by the FDCA............17

        3.  No overriding state interest is served when federal interests outweigh state interests.............................................19

    C.  While State-Court Proceedings Are Adequate to Raise Federal Claims, Such Claims Had Already Been Raised and Addressed Here ....................................................................21

    D.  This Action Would Not Have Interfered with State Proceedings......22

II.  THE DISTRICT COURT ERRED IN APPLYING THE  ANTI-INJUNCTION ACT.................................................................24

    A.  The City Attorney's Anti-Injunction Act Argument Was Untimely and Barred ....................................................24

    B.  Plaintiffs Did Not Seek Relief Prohibited by the Anti-Injunction Act ....................................................................26

    C.  Plaintiffs' Section 1983 Claim Fell Within an Established Exception to the Anti-Injunction Act.................................28

CONCLUSION ..............................................................................30

# TABLE OF CONTENTS

(continued)

**Page**

CERTIFICATE OF COMPLIANCE ........................................................................31

CERTIFICATE OF SERVICE ...............................................................................1

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aaronson v. Vital Pharm., Inc.*,
No. 09-CV-1333 W(CAB), 2010 WL 625337 (S.D. Cal. Feb. 17, 2010).........20

*Aiona v. Judiciary of State of Haw.*,
17 F.3d 1244 (9th Cir. 1994) .............................................................................10

*AmerisourceBergen v. Roden*,
495 F.3d 1143 (9th Cir. 2007) .............................................................8, 22, 24

*Babbitt v. United Farm Workers Nat'l Union*,
442 U.S. 289 (1979)..........................................................................................16

*Baffert v. Cal. Horse Racing Bd.*,
332 F.3d 613 (9th Cir. 2003) ..............................................................................9

*Bank One Del. N.A. v. Wilens*,
No. SASV 03-274-JVS ANx,
2003 WL 21703627 (C.D. Cal. June 13, 2003).................................................26

*Barancik v. Investors Funding Corp.*,
489 F.2d 933 (2d Cir. 1973) .............................................................................26

*Bluehippo Funding LLC v. McGraw*,
No. 2:07-0399, 2007 WL 6216559 (S.D.W. Va. Oct. 25, 2007)......................17

*California v. Randtron*,
284 F.3d 969 (9th Cir. 2002) ............................................................................29

*Chacanaca v. Quaker Oats Co.*,
752 F. Supp. 2d 1111 (N.D. Cal. 2010)............................................................15

*Chavez v. Blue Sky Natural Beverage Co.*,
268 F.R.D. 365 (N.D. Cal. 2010)......................................................................15

*Cnty. of Allegheny v. Frank Mashuda Co.*,
360 U.S. 185 (1959)..........................................................................................27

iii

*Commc'ns Telesystems Int'l v. Cal. Pub. Utilities Comm'n*,
196 F.3d 1011 (9th Cir. 1999) ............................................................................11

*DeBuono v. NYSA-ILA Med. & Clinical Servs. Fund*,
520 U.S. 806 (1997)..............................................................................................18

*Fla. Lime & Avocado Growers v. Paul*,
373 U.S. 132 (1963)..............................................................................................18

*Fresh Int'l Corp. v. Agric. Labor Relations Bd.*,
805 F.2d 1353 (9th Cir. 1986) ............................................................................12

*Gilbertson v. Albright*,
381 F.3d 965 (9th Cir. 2004) ......................................................................22, 28

*Heat Surge, LLC v. Lee*,
No. C 09-572 JF (PVT), 2009 WL 18883715 (N.D. Cal. June 30, 2009)...........8

*In re Farm Raised Salmon Cases*,
42 Cal. 4th 1077 (2008) ................................................................................15, 18

*Jones v. ConAgra Foods, Inc.*,
912 F. Supp. 2d 889 (N.D. Cal. 2012) ................................................................15

*Loreto v. Procter & Gamble Co.*,
515 F. App'x 576 (6th Cir. 2013) ........................................................................18

*M&A Gabaee* v. *Cmty. Redevelopment Agency*,
419 F.3d 1036 (9th Cir. 2005) ..............................................................................8

*Mannheim Video, Inc. v. Cnty. of Cook*,
884 F.2d 1043 (7th Cir. 1989) ..............................................................................8

*Medtronic v. Lohr*,
518 U.S. 470 (1996)..............................................................................................15

*Meredith v. Oregon*,
321 F.3d 807 (9th Cir. 2003) ................................................................................9

*Metro. Life Ins. Co. v. Taylor*,
481 U.S. 58 (1987)..........................................................................................12, 14

iv

*Mitchum v. Foster*,
   407 U.S. 225 (1972)........................................................................................28

*Morales v. Trans World Airlines, Inc.*,
   504 U.S. 374 (1992)........................................................................................29

*N.Y. State Rest. Ass'n v. N.Y.C. Bd. of Health*,
   556 F.3d 114 (2d Cir. 2009) ...........................................................................15

*Nat'l City Lines, Inc. v. LLC Corp.*,
   687 F.2d 1122 (8th Cir. 1982) ........................................................................27

*Nevin v. Ferdon*,
   413 F. Supp. 1043 (N.D. Cal. 1976)..............................................................6, 8

*New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*,
   491 U.S. 350 (1989)..............................................................................9, 19, 20

*Oregon ex rel. Kroger v. Johnson & Johnson*,
   832 F. Supp. 2d 1250 (D. Or. 2011) ..........................................................18, 19

*Pennzoil Co. v. Texaco, Inc.*,
   481 U.S. 1 (1987)............................................................................................21

*Perez v. Nidek Co.*,
   711 F.3d 1109 (9th Cir. 2013) ........................................................................18

*Perlberger v. Perlberger*,
   No. 97-4105, 1998 WL 472657 (E.D. Pa. Aug. 13, 1998)..........................16, 17

*Polykoff v. Collins*,
   816 F.2d 1326 (9th Cir. 1987) ..........................................................................8

*Potrero Hills Landfill, Inc. v. Cnty. of Solano*,
   657 F.3d 876 (9th Cir. 2011) .......................................................................3, 11

*Red Bluff Drive-In, Inc. v. Vance*,
   648 F.2d 1020 (5th Cir. 1981) ........................................................................16

*Reese v. Odwalla*,
   30 F. Supp. 3d 935 (N.D. Cal. 2014)...............................................................20

*Riley v. Cordis Corp.*,
    625 F. Supp. 2d 769 (D. Minn. 2009).................................................................17

*Schering-Plough Healthcare Prods. v. Schwarz Pharma, Inc.*,
    586 F.3d 500 (7th Cir. 2009) ..............................................................................20

*Steffel v. Thompson*,
    415 U.S. 452 (1976).........................................................................................4, 5

*Stengel v. Medtronic Inc.*,
    704 F.3d 1224 (9th Cir. 2013) ............................................................................18

*Tex. Employers' Ins. Ass'n v. Jackson*,
    862 F.2d 491 (5th Cir. 1988) ..............................................................................28

*Thompson v. Runnels*,
    705 F.3d 1089 (9th Cir.), *cert. denied*, 134 S. Ct. 234 (2013) ...........................4

*Turek v. Gen. Mills, Inc.*,
    662 F.3d 423 (7th Cir. 2011) .......................................................................10, 12

*Wise v. Nordell*,
    No. 12cv1209-GPC(BGS), 2013 WL 1224302 (S.D. Cal. Mar. 22, 2013)..........8

*Younger v. Harris*,
    401 U.S. 37 (1971)...............................................................................................21

*Zuckman v. Monster Beverage Corp.*,
    No. 2012 CA 8653 (D.C. Super. Ct. June 12, 2014) .........................................20

## STATUTES

21 U.S.C.
    § 393(b)(2) .............................................................................................................9

# RULES

Fed. R. Civ. P.

Rule 12(b)(2)-(5) ............................................................................25
Rule 12(b)(6) ..................................................................................25
Rule 12(g) ..............................................................................24, 25
Rule 12(h)(1) ..................................................................................25
Rule 12(h)(2) ..................................................................................25
Rule 12(h)(3) ..................................................................................25

## INTRODUCTION

The City Attorney asks the Court to decide this appeal based on a distorted reality.  He contends that the state court action he filed against Monster Beverage Corporation ("MBC") in May 2013 was a garden-variety enforcement suit targeting allegedly unfair business practices relating to the manufacture and sale of Monster Energy® drinks.  (Not true.)  He also contends that when MBC and Monster Energy Company ("Monster Energy") brought their earlier-filed suit in federal court, *they* were the ones interfering with a lawful investigation and prosecution.  (Also not true.)  More telling, though, is what the City Attorney continually omits from his narrative:  before he filed suit, he wrote directly to the United States Food & Drug Administration, asking it to take action regarding the broader issue of caffeine safety in energy drinks.  In that letter, he conceded that caffeine safety is a federal issue best handled at a national level:

> California's food safety and labeling laws adopt the requirements of the [ ] FDCA, including the GRAS standard . . . [T]he harms posed by energy drinks are not limited to California.  Therefore, I urge the FDA to exercise its authority under the FDCA to protect consumers from the dangerously high levels of caffeine found in many energy drinks.

(ER324.)

The City Attorney's selective retelling also ignores FDA's response:  the agency agreed, and promptly launched a full-scale investigation into caffeine safety that remains ongoing.  Despite this, the City Attorney decided that his

1

targeted prosecution of MBC took precedence—even if his state court action might result in a ruling contrary to FDA's findings. And he elected for 16 months to assert claims solely against MBC (a holding company), another reason that the Court should allow Monster Energy's claim to proceed.

The City Attorney claims this background is irrelevant and asks that the Court apply *Younger* and the Anti-Injunction Act narrowly to affirm the district court's decision. His arguments fail.

<u>First</u>, the City Attorney claims that *Younger* does not require or permit courts to consider "countervailing federal interests." Wrong. *Younger* abstention is a narrow *exception* to the presumption that federal courts retain jurisdiction over cases before them. The goal of *Younger* is to avoid those limited situations where federal court jurisdiction would interfere with *uniquely* state interests. At minimum, the Court should reverse the district court's ruling as to those claims where federal interests are paramount. If the City Attorney were correct, then *Younger* abstention would apply even where state claims are preempted by federal law. It does not, which is determinative here because the district court ruled that demands about reformulating, relabeling, and adding warnings to Monster Energy® drinks are preempted.

<u>Second</u>, the City Attorney fails to show that application of the Anti-Injunction Act was proper. He offers no credible explanation for his tardiness in

2

raising the argument. He also misconstrues the law governing instances where a federal suit seeking an injunction is filed before the state action. Similarly, he misrepresents Plaintiffs' claim for injunctive relief, and fails to explain why the requested relief falls outside of an authorized exception to the Act.

For these and the other reasons discussed below, the Court should reverse the order of dismissal.

## I. THE DISTRICT COURT ERRED IN APPLYING *YOUNGER* ABSTENTION

*Younger* abstention is an "extraordinary and narrow exception" to the general rule that federal courts must exercise jurisdiction over civil cases properly before them. (*See* Appellants' Opening Brief (AOB) 14-15); *see Potrero Hills Landfill, Inc. v. Cnty. of Solano*, 657 F.3d 876, 882 (9th Cir. 2011). The City Attorney ignores the limited nature of the *Younger* doctrine in civil proceedings, asserting instead that a general presumption exists in favor of state court jurisdiction. (Answering Brief (AB) 13-14.) His view is inconsistent with the policy underlying *Younger*: federal courts only abstain in those limited instances where state issues are paramount. This fundamental misconception pervades his discussion of each *Younger* factor.

### A. There Was No Ongoing State-Court Proceeding Against *Both* MBC *and* Monster Energy

#### 1. The City Attorney did not sue Monster Energy until nearly a year after the district court abstained under *Younger*

The City Attorney initially only sued one defendant, MBC.[1]  (AOB15-16.)

It was not until well after the district court granted his motion to dismiss under

*Younger* that the City Attorney added Monster Energy as a defendant in a Second

Amended Complaint filed in September 2014, 16 months after he first sued.  (RJN

Ex. D.)  Because there was no ongoing state-court proceeding against Monster

Energy at the time of the *Younger* motion, it was error for the district court to bar

litigation of claims brought in federal court by Monster Energy.  *See Steffel v.*

*Thompson*, 415 U.S. 452, 462 (1976)(without an ongoing state-court proceeding,

"federal intervention does not result in duplicative legal proceedings or disruption

of the state [ ] system").

The City Attorney's response to this argument lacks merit.

First, he contends that Monster Energy waited too long to raise this issue.

(AB17.)[2]  He acknowledges that there are established exceptions to this general

---

[1] Nor did the complaint name any Doe Defendants.

[2] The assertion that Monster Energy should have raised this argument earlier is a misplaced attempt to shift blame.  Once an issue or claim is properly before the Court, the Court is not limited to the particular legal theories advanced by the parties.  *See Thompson v. Runnels*, 705 F.3d 1089, 1098 (9th Cir.), *cert. denied*, 134 S. Ct. 234 (2013).

rule, but contends none apply because there is no risk of a "miscarriage of justice," no change in the applicable law, and the issue does not present a "pure question of law." (*Id.*) This issue can readily be decided on the pleadings. His failure to sue Monster Energy until September 5, 2014 is not disputed.

Nor can the City Attorney claim that MBC and Monster Energy are so "intertwined" that there is no distinction between them. Plaintiffs made this distinction clear in the complaint they filed in April 2013: paragraph 11 states that MBC "is a holding company that conducts no operating business except through its wholly-owned subsidiaries," and paragraph 12 states that Monster Energy "markets and contracts with independent companies to distribute energy drinks and alternative beverages." (ER259-260 [¶¶ 11-12].) The same clear distinction between the two entities is reflected in every audited financial statement that MBC files with the U.S. Securities and Exchange Commission. (*E.g.*, MBC Form 10-K at p. 3, filed March 1, 2013, http://www.sec.gov/Archives/edgar/data/ 865752/000110465913016713/a12-27759_110k.htm.) The City Attorney cannot claim ignorance, and should not be permitted to benefit from his error for purposes of this appeal.

Second, the City Attorney argues that a reversal in favor of Monster Energy allowing its federal lawsuit to proceed would make "direct interference with the state suit inevitable." (AB18.) In support, he claims that Plaintiffs' injunctive

relief claim seeks to enjoin him from proceeding with the state action in its entirety. (*Id.*) As discussed further in Section I.D, the City Attorney misrepresents the nature of Plaintiffs' lawsuit. Plaintiffs sought to enjoin his unlawful investigation and demands, not his general authority to bring an enforcement action.

### 2. Proceedings of substance on the merits took place in federal court before the state-court action was remanded

The federal action had proceeded beyond the "embryonic" stage by the time the City Attorney's case was remanded to state court. (AOB16-17.) By then, the district court had twice ruled on the same issues in the related case, *Fisher* v. *Monster Beverage Corporation, et al.*, Central District of California Case No. 12-cv-2188 VAP, and thus considerations of economy, equity, and federalism precluded *Younger* abstention. *See also Nevin v. Ferdon*, 413 F. Supp. 1043, 1048 (N.D. Cal. 1976)(considering whether proceedings of substance on the merits took place in federal court prior to order of remand).

The City Attorney argues that even after remand, the relevant date is when the state court action was *filed*. (AB14-15.) He says any other rule would "encourage gamesmanship and sham removals." (AB15.) But it was the City Attorney who engaged in gamesmanship by filing a parallel state court suit to avoid federal court. Worse, he benefited from this gamesmanship by seeking and obtaining a conflicting ruling from the state court on the same preemption issues

6

that the district court had already addressed three times (once in this case and twice in *Fisher*). Enabling a party to relitigate issues previously determined against him is precisely why abstention was not appropriate.

Further, while the City Attorney disputes that the district court's preemption rulings constituted "proceedings on the merits," it is undeniable that the state court's subsequent ruling on the issue of federal preemption conflicted directly with those three rulings. And while the City Attorney claims that *Fisher* is an "*entirely separate action*" that has no bearing on whether proceedings of substance took place in this case (AB16), he is impeached by the record. When Plaintiffs filed their notice of related cases, they listed *Fisher* as a case arising from the "same or closely related transactions, happening, or events; call for a determination of substantially similar questions of law and fact; and would entail substantial duplication of labor if heard by different judges." (CR11 at 1.) The City Attorney opposed Plaintiffs' notice of related case as to a different case, but not *Fisher*. (CR12.) Nor could he—*Fisher* is the consumer class action equivalent of the City Attorney's action; each seek relief on behalf of the same group of consumers for the same alleged statutory violation. (AOB10-11.)[3]

_____

[3] Despite claiming *Fisher* is not related, the City Attorney found his stake in the outcome of the pending *Fisher* appeal important enough to file an amicus brief. (*Fisher v. Monster Beverage Corp.*, No. 13-57094 (9th Cir.), Dkt. No. 14.)

The City Attorney's cited authority either supports Plaintiffs or is distinguishable. In *Nevin*, a case that supports Plaintiffs, the court considered whether proceedings of substance took place in federal court *before* the order of remand, and not at the time the state court case was filed. There, the state case was filed *before* the federal case. *Nevin*, 413 F. Supp. at 1046. In *Heat Surge, LLC v. Lee*, No. C 09-572 JF (PVT), 2009 WL 18883715, at *6 n.7 (N.D. Cal. June 30, 2009), the court refused to apply *Younger* because "not all Plaintiffs are parties in the underlying state court action, and thus dismissal pursuant to *Younger* is not warranted at this time." The City Attorney's remaining cases are easily distinguishable.[4]

## B. No Uniquely State Interests Were Implicated

The second requirement of *Younger* abstention was not satisfied because California does not have a unique interest in the caffeine safety issues raised in the state court litigation. (*See* AOB20-22); *see also AmerisourceBergen v. Roden*, 495 F.3d 1143, 1150 (9th Cir. 2007)(The goal of *Younger* abstention is to "avoid

---

[4] *See M&A Gabaee* v. *Cmty. Redevelopment Agency*, 419 F.3d 1036, 1039 (9th Cir. 2005)(applying *Younger* where state court suit filed a month before federal court suit); *Polykoff v. Collins*, 816 F.2d 1326, 1333 (9th Cir. 1987)(declining to apply *Younger* where state court suit sought declaratory judgment on the same issues subject to pending federal action); *Mannheim Video, Inc. v. Cnty. of Cook*, 884 F.2d 1043, 1045-46 (7th Cir. 1989)(no rulings in related cases to consider for purposes of *Younger*); *Wise v. Nordell*, No. 12cv1209-GPC(BGS), 2013 WL 1224302, at *2 (S.D. Cal. Mar. 22, 2013)(same).

federal court interference with *uniquely* state interests such as preservation of these states' peculiar statutes, schemes, and procedures.").

The City Attorney's response underscores his fundamental misunderstanding of the contours of the *Younger* abstention doctrine. He offers three "important" state interests that he claims satisfy *Younger*: (1) protecting health and safety, i.e., protecting residents from unsafe and mislabeled foods; (2) protecting consumers from unfair and deceptive business practices; and (3) enforcing the state's laws. None of these "interests," however, is a unique state interest under *Younger*.

First, the City Attorney argues that the state has an interest in protecting its residents from unsafe and mislabeled food products.[5] (AB19.) Food safety and labeling, however, is a uniquely *federal* issue. *See* 21 U.S.C. § 393(b)(2)(FDA responsible for protecting public health by ensuring that "foods are safe, wholesome, sanitary, and properly labeled"). Moreover, the Sherman law, which merely incorporates the FDCA, does not qualify as one of the state's "peculiar statutes, schemes, and procedures" as required by *Younger*.[6] The City Attorney

---

[5] *New Orleans Public Service, Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 365 (1989), and *Baffert v. Cal. Horse Racing Bd.*, 332 F.3d 613, 617-18 (9th Cir. 2003), confirm that the state must have a unique interest in the broader issue implicated.

[6] None of the City Attorney's authorities involve the safety and labeling of *food* products. *See Meredith v. Oregon*, 321 F.3d 807, 818 (9th Cir.

9

cannot seriously dispute this after he admitted as much in his letter to FDA. (ER324.)

This is the same reason why the City Attorney's selective prosecution of MBC (and much later, Monster Energy) matters. The issue is not whether *Younger* applies in cases involving a single defendant. Given that his own letter to FDA acknowledged that "the [alleged] harms posed by energy drinks are not limited to California," *Younger* does not permit the City Attorney, whose jurisdiction is limited to California, to litigate national issues of caffeine safety in a state court action against one manufacturer (and a holding company).[7] *See Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 426 (7th Cir. 2011)("It is easy to see why Congress would not want to allow states to impose disclosure requirements of their own on packaged food products, most of which are sold nationwide.").

Second, the City Attorney argues that the state has an important interest in protecting consumers from unfair and deceptive business practices. He notes that the state also has an interest in preventing businesses from gaining unfair

---

2003)(involving the Oregon Motorist Information Act); *Aiona v. Judiciary of State of Haw.*, 17 F.3d 1244, 1249 (9th Cir. 1994)(involving Hawaii drunk driving law).

[7] Monster Energy is not even the largest seller of energy drinks in the City Attorney's home jurisdiction; two competitors have a larger presence. (*See* AOB 22 n.10.) Moreover, Monster Energy® drinks have been safely consumed around the world for more than a decade. (AOB 1 n.1.) Thus there was no need for the City Attorney to rush to litigate in state court while FDA was in the middle of its own active inquiry.

advantage over their competitors. (AB19.) These state "interests," however, cannot be assessed in isolation. The gravamen of the state court litigation is that Monster Energy® drinks purportedly contain unsafe levels of caffeine under *federal* law. (ER256 ¶ 1; AOB 24-25 & n.12.) The City Attorney cannot ignore the allegations of his complaint, and simultaneously pretend in this Court that the case involves garden-variety unfair business practices.[8] (*Compare* ER104 ¶ 6 *with* AB19-20.)

Third, the City Attorney contends that his action implicates California's interest in enforcing its own laws. And because this is an "enforcement" action, the federal court should abstain in deference to his state court action against Plaintiffs. (AB19-20.) This "important" state interest fails the *Younger* requirements. The relevant law here is the FDCA, and specifically, the federal GRAS standard. There is no equivalent state law food safety standard. This is also why the City Attorneys' claims are impliedly preempted.[9]

---

[8] *Communications Telesystems International v. California Public Utilities Commission*, 196 F.3d 1011, 1017 (9th Cir. 1999) is inapposite. That case did not involve a federal agency with a pending investigation involving the same claims at issue in the later-filed state action.

[9] The City Attorney's reliance on *Potrero Hills Landfill, Inc. v. County of Solano*, 657 F.3d 876, 888 (9th Cir. 2011) is misplaced. In that case, the federal court found that *Younger* did not apply because "not only were no important state interests of the kind recognized by *Younger* at stake, but the County—and the State of California, as amicus—expressly asked the federal court to exercise its

**1.      No state interest is served where the state action is preempted.**

The parties agree that *Younger* abstention does not apply where preemption is readily apparent.  (AOB22; AB22.)  Because the City Attorney's claims are expressly and impliedly preempted (AOB22), the district court erred in applying *Younger*, particularly given its earlier ruling that such claims were expressly preempted.

The City Attorney asserts that two federal courts and one state court rejected Plaintiffs' preemption argument.  (AB22.)  The cited orders, however, do not have the sweeping effect the City Attorney claims.  As to the Northern District of California's order remanding the City Attorney's suit back to state court, the Northern District did not consider "preemption" as a defense.  (*Id.*)  Rather, the court considered Plaintiffs' argument in opposing remand that the "complete preemption" doctrine supported federal question jurisdiction.  The complete preemption doctrine for jurisdiction is wholly distinct from the separate defense of preemption.  *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 66-67 (1987)(preemptive force of certain federal statutes is so powerful that it displaces all state causes of action and a plaintiff's artful pleading of state law does not

---

jurisdiction to resolve this solitary question of federal constitutionality."  And *Fresh International Corp. v. Agricultural Labor Relations Board*, 805 F.2d 1353, 1362 (9th Cir. 1986) involved an ERISA matter where state law did not directly impose substantive requirements on employee benefit plans.

12

destroy the essentially federal nature of the lawsuit).  As for the district court's decision that for purposes of *Younger*, it was not "readily apparent" that the City's Attorney's entire action was preempted, that was error for the reasons discussed below.  It was also contrary to the district court's earlier finding that at least some of the City Attorney's demands *were* expressly preempted.  (ER165.)  Finally, the state court's decision on preemption was also error, and at direct odds with the district court's earlier preemption ruling, as well as with the two rulings in the related *Fisher* action.  (AOB9-11.)

The City Attorney further contends that Plaintiffs failed to show that express preemption is "readily apparent" here.  His arguments do not withstand scrutiny.

First, he argues that Plaintiffs have not explained the basis for their express preemption argument.  (AB22-23.)  Plaintiffs, however, explained that the City Attorney's claims were expressly preempted for the same reasons stated in the district court's initial ruling on the City Attorney's motion to dismiss:  he "seeks to impose *more than required by* the FDA."  (AOB23; ER164-66.)  As discussed further below, it is "readily apparent" that at least some of the City Attorney's demands are expressly preempted.

Second, the City Attorney contends that the district court's ruling is not entitled to any weight because it considered only his demand letter, and not the state court action.  (AB23.)  There is no difference between the two; the City

13

Attorney's state court complaint seeks to impose the same unlawful requirements.[10]

        *Third*, he contends that Plaintiffs' express preemption argument fails under the law. (*Id.*) He argues that the NLEA's express preemption provision does not preempt the state law claims because they are presented under California's food safety laws, which "do not impose any requirements that differ from those imposed by federal law." (AB24.) This is at odds, however, with the district court's specific ruling that the City Attorney did in fact seek to impose "not identical" requirements. (ER164-66.) As the court explained, the City Attorney made certain demands, including that "Monster change the labels on its energy drinks to provide adequate warnings." (ER164.) While he contends that he seeks to enforce the same requirements imposed by federal law, the warnings he demands are not imposed by FDA. (ER165 (citing 21 C.F.R. § 101.17).) He also demands that "Monster post certain labels on its energy drinks regarding the amount of caffeine they contain." (*Id.*) Yet, federal law governs nutritional labeling, including for dietary supplements, and does not require such disclosures. (ER165-66 (citing 21 U.S.C. § 343(q)).) Similarly, the district court found that the City Attorney's

---

[10] The City Attorney's complaint specifically alleges that Plaintiffs sell products with misleading and inadequate warning labels. (ER105 [¶ 8]; ER109 [¶ 27]; ER111 ¶ 34]; ER117-118 [¶¶ 44-45]; ER118, 119 [¶¶ 45, 48-49]; ER123 [¶¶ 1, 62].)

"demands to reformulate the energy drinks to lower the caffeine content is also not an obligation imposed by the FDA." (ER166.)

Thus, there *is* a conflict between the City Attorney's claims and federal law. He does *not* seek to impose "identical" labeling requirements. And the cases the City Attorney relies on all require that the plaintiff impose requirements that are the same as those required by federal law. *See Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 896 (N.D. Cal. 2012)(plaintiff's claims must rely on state laws that are effectively the same as NLEA to avoid express preemption); *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1118-19 (N.D. Cal. 2010) (same); *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 370 (N.D. Cal. 2010)(same); *In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1090-91 (2008)(same); *Medtronic v. Lohr*, 518 U.S. 470, 495-96 (1996)(in the context of medical devices, state requirements are not preempted unless they are "different from, or in addition to," the federal requirement); *N.Y. State Rest. Ass'n v. N.Y.C. Bd. of Health*, 556 F.3d 114, 123 (2d Cir. 2009)("The NLEA, however, *does* generally regulate nutrition content claims on restaurant foods, and states and localities may only adopt rules that are identical to those provided in the NLEA.").

Fourth, the City Attorney contends that Plaintiffs' preemption argument fails because "it is undisputed that at least the People's theory that Monster has misrepresented the benefits of its product is not preempted." (AB25.) Because the

15

state court action includes only one cause of action, he says, that cause of action survives if he can show that Plaintiffs violated the UCL under any of his theories of liability. (*Id.*) Plaintiffs already explained why this is wrong: the gravamen of the City Attorney's state-court case is that Monster Energy® drinks are not safe under FDA's GRAS regulations. (AOB24-25 & n.12.) The district court should have weighed this overwhelming federal interest against application of *Younger* abstention. (*See* Section I.B.3.)

Fifth, and relatedly, the City Attorney asserts that the district court correctly abstained as to all of Plaintiffs' claims (as opposed to partially abstaining) because at least one of the City Attorney's theories—the substantiation claim—is not expressly preempted.[11] (AB25.) He cites no cases in support of this assertion, however, because there are none. In fact, he fails to address Plaintiffs' cases that demonstrate why the district court erred by not limiting the scope of its abstention order. *See, e.g.*, *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 305-06 (1979)(holding the district court should have partially abstained, and proceeded to the merits on some claims); *Red Bluff Drive-In, Inc. v. Vance*, 648 F.2d 1020, 1025 n.3 (5th Cir. 1981)(reversing abstention in part and ordering partial abstention of claims); *see also Perlberger v. Perlberger*, No. 97-4105, 1998 WL

---

[11] There is only one cause of action because the City Attorney combined six separate claims into that one cause of action.

472657, at *5 (E.D. Pa. Aug. 13, 1998)(ordering partial abstention); *Bluehippo Funding LLC v. McGraw*, No. 2:07-0399, 2007 WL 6216559 (S.D.W. Va. Oct. 25, 2007)(same).

Finally, his assertion that Plaintiffs' argument for partial abstention is untimely is without merit. (AOB16, n.7; *see also* n.2, *supra*.)

## 2. The state action is impliedly preempted by the FDCA

Plaintiffs showed that the "direct and essential" question presented by the City Attorney's complaint is whether the caffeine level in Monster Energy® drinks is GRAS. (*See* AOB26; ER103 [¶ 1].) His enforcement action, therefore, necessarily depends on FDA regulations.

The City Attorney argues that implied preemption does not apply because there is no "clear and manifest intent by Congress to preempt state food safety laws." (AB26.) But as he concedes, the FDCA only permits states to adopt standards that are "identical" to the federal standard. (AB27.) That is not the case here. (*See* Section I.B.1.) Nor may he use state law indirectly to enforce the FDCA. A state law claim does not exist where it is "in substance (even if not in form) a claim for violating the FDCA—that is, when the state law claim would not exist if the FDCA did not exist." (AOB27-28); *see also Riley v. Cordis Corp.*, 625 F. Supp. 2d 769, 777 (D. Minn. 2009). The City Attorney may only avoid preemption if his complaint was based on a preexisting state-law duty—not FDA's

17

GRAS requirement. *Perez v. Nidek Co.*, 711 F.3d 1109, 1120 (9th Cir. 2013)("[T]he must not be suing *because* the conduct *violates* the FDCA.")(internal quotation marks and citation omitted).

Indeed, the cases on which the City Attorney relies all fall within this narrow gap. *Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1227-28 (9th Cir. 2013)(no preemption in medical device case where Arizona law claim was independent of FDA's pre-market approval process); *DeBuono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 814-15 (1997)(New York law that increased cost of providing benefits to covered employees was not preempted because even though it will have some effect on the administration of ERISA plans, so do myriad other laws); *Farm Raised Salmon*, 42 Cal. 4th at 1082-83 (claim regarding "passing off" grey farmed salmon as pink wild salmon was not preempted because it was based on an independent state law tort); *Fla. Lime & Avocado Growers v. Paul*, 373 U.S. 132, 144 (1963)(Florida law governing avocado maturity not preempted because no federal law sets nationwide avocado maturity standards); *Loreto v. Procter & Gamble Co.*, 515 F. App'x 576, 578-80 (6th Cir. 2013)(state claim alleging that products were illegal because their labeling did not comply with FDCA requirements was impliedly preempted, but claim that Vitamin C can blunt the effects of a cold was not because plaintiff's claim was not based on FDA regulations regarding Vitamin C); *Oregon ex rel. Kroger v. Johnson & Johnson*,

832 F. Supp. 2d 1250, 1259 (D. Or. 2011)(claim that defendants misled Oregon consumers into believing product met FDA standards not a claim to enforce a federal statute).

### 3. No overriding state interest is served when federal interests outweigh state interests

Courts refuse to abstain under *Younger* where federal interests outweigh state interests. (*See* AOB28-31.) Here, because federal interests in uniform application of food safety and labeling laws outweigh the City Attorney's interest in regulating in one state, the district court erred in abstaining under *Younger*.

The City Attorney claims that *Younger* abstention does not require or permit courts to consider "countervailing federal interests." (AB2.) He has it backwards. *Younger* abstention is a narrow exception to the presumption that federal courts should assert jurisdiction over cases before them.

*New Orleans Public Service, Inc.*, 491 U.S. 350, 365 (1989) is not to the contrary. There, the Supreme Court reiterated the rule that when a court looks into the "substantiality of the State's interest in its proceedings we do not look narrowly to its interest in the *outcome* of the particular case—which could arguably be offset by a substantial federal interest in the opposite outcome." *Id.* Here, it is clear that there can be no *uniquely* state interest when Congress enacted the FDCA to create uniform food labeling regulations. (ER167.) This federal policy is not advanced, but rather hindered, by the City Attorney's actions—a policy the district court

19

recognized as paramount when it found that FDA has a unique interest in, and "special competence" over, the matters at issue in this case. (*Id*.)[12] Indeed, federal courts routinely stay or dismiss cases in deference to FDA under the primary jurisdiction doctrine where, as here, there is a pending FDA investigation into food safety issues. (RJN Ex. B; ER46 (dismissing nearly identical claims in *Fisher* based on failure to adequately label and warn as preempted; applying primary jurisdiction)); *Aaronson v. Vital Pharm., Inc.*, No. 09-CV-1333 W(CAB), 2010 WL 625337 (S.D. Cal. Feb. 17, 2010)(dismissing challenge to safety of energy drinks based on primary jurisdiction); *Schering-Plough Healthcare Prods. v. Schwarz Pharma, Inc.*, 586 F.3d 500, 510 (7th Cir. 2009)(primary jurisdiction applied where plaintiff "jumped the gun by suing before the FDA addressed the misbranding issue"); *Reese v. Odwalla, Inc.*, 30 F. Supp. 3d 935, 941 (N.D. Cal. 2014)(applying primary jurisdiction to food labeling claim where the issue was "before the agency at this moment").[13]

The City Attorney contends that state courts rejected MBC's primary jurisdiction challenge to the City Attorney's action and that it is irrelevant to the

---

[12] Further, FDA has repeatedly confirmed not only that this is an important federal issue, but that "develop[ing] policy/regulatory options for 'energy drinks'" is one of its ***main priorities***. (*See* AOB13 n.6.)

[13] *See also Zuckman v. Monster Beverage Corp.*, No. 2012 CA 8653 (D.C. Super. Ct. June 12, 2014)(staying parallel action against MBC on primary jurisdiction grounds).

*Younger* analysis. He overstates the first point and is wrong as to the second. While the state trial court overruled MBC's demurrer based on primary jurisdiction, the California Court of Appeal and California Supreme Court's subsequent denials of petitions for discretionary review have no precedential effect. (Herrera RJN Exs. 4-5.) The appellate courts did not consider MBC's primary jurisdiction argument on the merits. Moreover, that one state court rejected application of the primary jurisdiction doctrine does not mean that the primacy of federal interests in this case is irrelevant for *Younger*.[14]

### C. While State-Court Proceedings Are Adequate to Raise Federal Claims, Such Claims Had Already Been Raised and Addressed Here

The third *Younger* factor is whether an adequate opportunity exists to raise the plaintiff's constitutional claims in state proceedings. *Younger v. Harris*, 401 U.S. 37, 45 (1971). As Plaintiffs explained, the issue is not whether the state court is competent to consider such claims, but that there is no just cause requiring abstention given that the safety of energy drinks falls within the jurisdiction of FDA. (AOB31-32.)

---

[14] The City Attorney misconstrues *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 17 (1987). (AB31.) That case involved a breach of contract claim relating to the sale of stock, and did not involve or discuss primary jurisdiction. *Id.* Accordingly, it does not stand for the proposition that under *Younger*, the state court—not the federal court—is entitled to weigh federal interests corresponding with the primary jurisdiction doctrine.

The City Attorney argues that "efficiency is not relevant to the third prong of the *Younger* analysis."  (AB32.)[15]  As an initial matter, whether claims regarding federal food regulation should be addressed by FDA in the first instance is not simply a question of efficiency.  Rather, as discussed in Section I.B, when there is no uniquely state interest, abstention is inappropriate.  Further, courts do, in fact, consider issues of efficiency when applying *Younger*.  *See AmerisourceBergen*, 495 F.3d at 1150 n.12 (noting that hearing the claim in federal court would further "the goal of expeditious case resolution").  As Plaintiffs have shown, the district court had already addressed and analyzed multiple times the preemption and primary jurisdiction arguments detailed above.  (*See* Section I.A.2.)

### D.   This Action Would Not Have Interfered with State Proceedings

The district court similarly erred in finding that the relief that Plaintiffs sought in this action would interfere with state-court proceedings.  (AOB32-34.)

<u>First</u>, Plaintiffs demonstrated that this action did not and could not interfere with state proceedings against Monster Energy, because no such proceedings were pending.  The City Attorney has no response.  It thus was error for the district court to abstain as to Monster Energy's claims.

---

[15] *Gilbertson v. Albright*, 381 F.3d 965, 972 (9th Cir. 2004) is distinguishable.  It did not involve federal claims within the purview of a federal agency.  Rather, it involved a land surveyor whose state license was revoked, and the plaintiff filed a federal suit challenging the board's actions as unconstitutional.  *Id.* at 968-69.

22

Second, as Plaintiffs explained, MBC and Monster Energy sought to enjoin the City Attorney from pursuing remedies outside the scope of his authority, not from generally enforcing the UCL. (AOB32-33.) Specifically, Plaintiffs sought a declaration that the City Attorney's demands (*e.g.*, reformulation, relabeling, and further warnings) were preempted, subject to the doctrine of primary jurisdiction, and unconstitutional. (ER 282 [¶1].) To the extent the City Attorney could state a claim for relief in state court based on claims properly within his authority—such as his claim that Monster Energy® drinks are marketed with unsubstantiated claims about the purported benefits of their ingredients—this action would not affect that claim. (AOB32-33.) In response, the City Attorney offers only his conclusory assertion that "there is no doubt that Monster seeks to interfere with the City Attorney's enforcement action currently pending in state court." (AB33.)

Nor does he address the fact that it is *his* action that has interfered with ongoing federal interests. Instead, he contends that the issues of federal primacy are for the state court to decide, and that California courts have rejected Plaintiffs' primary jurisdiction arguments. (AB33-34.) Again, this is wrong for the same reason discussed in Section I.B.3.

Third, to the extent the district court found some of the City Attorney's claims not preempted, the answer was to partially abstain, as discussed in Section I.B.1. A "mere potential for conflict" with ongoing state court proceedings does

not "warrant staying exercise of federal jurisdiction." *AmerisourceBergen*, 495 F.3d at 1151 (internal quotation marks and citation omitted).

## II. THE DISTRICT COURT ERRED IN APPLYING THE ANTI-INJUNCTION ACT

### A. The City Attorney's Anti-Injunction Act Argument Was Untimely and Barred

The City Attorney's Anti-Injunction Act argument is untimely because Federal Rule of Civil Procedure 12(g) bars a party from raising a defense or objection in a subsequent Rule 12 motion that was available, but omitted, in an earlier Rule 12 motion. (*See* AOB34-37.) Indeed, the district court agreed that the argument was untimely. (ER24.)

The City Attorney argues that this argument was not "available" when the district court considered his original motion to dismiss because the state-court action had been removed by the time of the hearing on that motion. (AB41.) But, the City Attorney could have preserved the Anti-Injunction Act argument the same way he preserved *Younger* abstention. He fails to explain this discrepancy.

Instead, the City Attorney argues that the district court "was bound to consider the Anti-Injunction Act's applicability regardless of whether the City Attorney raised the argument in a timely manner." (AB42.) Even were this correct, the district court's ruling was still error because the relief Plaintiffs sought was not prohibited by the Act, as discussed below in Section II.B.

24

Finally, the City Attorney claims that even if Rule 12(g) barred his claim on his motion to dismiss, it does not matter because he would have been free to raise the argument on a later motion. (AB42.) Accordingly, there was "no practical benefit [that] would be obtained from delaying consideration of the City Attorney's Anti-Injunction Act argument." (AB42-43.)

This is wrong, as Plaintiffs previously explained. None of the limited exceptions to Rule 12(g) applied here. The City Attorney was not raising a jurisdictional defense. (AOB34-35); *see* Fed. R. Civ. P. 12(h)(3). Moreover, the City Attorney's untimely Anti-Injunction Act argument did not fall within Rule 12(b)(6)'s allowance for legal defenses that can be raised later. Those circumstances, set forth in Rule 12(h)(2), are limited to "pleading[s] allowed or ordered under Rule 7(a), by a motion under Rule 12(c), or at trial." (AOB35.) Because he did not raise this defense in a manner authorized by Rule 12(h)(2), he was barred from doing so in his renewed motion to dismiss.[16]

---

[16] The City Attorney contends that the waiver does not apply because the Anti-Injunction Act is not a defense set forth in Rule 12(b)(2)-(5). (AB42 n.16.) This makes no sense. Rule 12(h)(1) addresses defenses set forth in Rule 12(b)(2)-(5). The Anti-Injunction Act defense is not a defense falling within those sections. Accordingly, the exceptions set forth in Rules 12(h)(2) and (3) apply; the City Attorney does not satisfy any of them.

**B.** **Plaintiffs Did Not Seek Relief Prohibited by the Anti-Injunction Act**

Even if the City Attorney had properly raised the Anti-Injunction Act argument, the relief sought by Plaintiffs fell outside the purview of the Act. (AOB37-41.) None of the City Attorney's arguments demonstrate otherwise.

<u>First</u>, the Anti-Injunction Act does not apply when, as here, the federal complaint seeking injunctive relief is filed before the state-court proceeding commences. (AOB38-40); *see Barancik v. Investors Funding Corp.*, 489 F.2d 933 (2d Cir. 1973); *Bank One Del. N.A. v. Wilens*, No. SASV 03-274-JVS ANx, 2003 WL 21703627 (C.D. Cal. June 13, 2003).

The City Attorney contends that the circuit courts "uniformly agree that the Anti-Injunction Act applies regardless of whether the federal or state action was filed first." (AB37.) This is incorrect. Although the district court sided with cases finding that the Anti-Injunction Act applied even where the state-court action is filed after the federal action, the district court recognized that there is a circuit split on the issue. (ER25-26.) The City Attorney, however, contends that the circuit split is over the narrow issue of "whether the Act applies where the state suit began *while a motion for injunctive relief was pending* before the federal court, but that issue is not presented here." (AB38.) This argument should be given no credence. Plaintiffs' complaint was one for declaratory and injunctive relief, so the filing of the complaint is synonymous to a pending motion for injunctive relief. *See Nat'l*

26

*City Lines, Inc. v. LLC Corp.*, 687 F.2d 1122, 1127-28 n.9 (8th Cir. 1982)(holding that the relevant date for the Anti-Injunction Act was the date when the federal complaint seeking injunctive relief was filed).

Second, the Anti-Injunction Act does not prevent Plaintiffs from obtaining the declaratory relief they are seeking. (*See* AOB40.) The City Attorney, however, contends that the Anti-Injunction Act bars declaratory judgments if those judgments have the same effect as an injunction. (AB35-37.) Not so.

If the district court had abstained only with regard to certain claims that it found were not "readily" preempted, such as the substantiation claim that Monster Energy® drinks lack the benefits claimed, then the federal court would retain jurisdiction over the remaining claims. A ruling on the remaining claims—caffeine safety under GRAS—would not "interfere" with a state court proceeding on the substantiation claim. While the federal court ruling may be relevant to the state court proceedings, and could operate as *res judicata* in certain instances, this does not present the type of "interference" prohibited by the Anti-Injunction Act. *See Cnty. of Allegheny v. Frank Mashuda Co*., 360 U.S. 185, 197-98 (1959)(a federal suit is not barred merely because the eventual holding might be *res judicata*

on parties litigating the same issue in state court).[17]  In short, the district court would not prevent the state court from considering all claims before it.

Finally, dismissal here did not serve the purposes of the Anti-Injunction Act, which is to avoid "unseemly conflict between the state and the federal courts." (AOB41 (citing *Nat'l Labor Relations Bd. v. Nash-Finch Co*., 404 U.S. 138, 146 (1971)).)  The only unseemly conflict was created by the City Attorney's own forum shopping.[18]  (AOB 2-3, 6-11.)

### C. Plaintiffs' Section 1983 Claim Fell Within an Established Exception to the Anti-Injunction Act

The parties agree that the Supreme Court has recognized that "[section] 1983 is an Act of Congress that falls within the 'expressly authorized' exception to the [Anti-Injunction Act]."  (AOB41; AB39); *Mitchum v. Foster*, 407 U.S. 225, 242-43 (1972).[19]

---

[17] The City Attorney's cited authority is distinguishable.  In *Texas Employers' Insurance Ass'n v. Jackson*, 862 F.2d 491, 505 (5th Cir. 1988), the federal action was filed more than a *year* after the state court suit, and after an ALJ judgment had become final and was paid in full.  And *Gilbertson*, 381 F.3d 971 is off point for the reasons discussed in Section I.C.

[18] The City Attorney argues that the purpose of the Anti-Injunction Act is irrelevant, and the Court should interpret the Act "literally."  (AB39.)  He fails to explain, however, how the "literal" interpretation of the Act is at odds with its purpose.  Nor could he.

[19] The Supreme Court has also repeatedly held that injunctions of state officials may be authorized where the officials "threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against

The City Attorney recycles his prior argument that the Anti-Injunction Act's clearly established exception for Section 1983 claims only applies where the state courts are themselves violating a party's constitutional rights. (AB39.) Plaintiffs already explained why this argument fails. Federal courts apply the exception where underlying threatened state action is unconstitutional, without asking whether the state court itself will uphold the Constitution. (AOB42 (citing *Anderson v. Nemitz*, 474 F.2d 818 (9th Cir. 1973)).)

The district court, however, held that Plaintiffs' Section 1983 claim did not fall within the "expressly authorized" exception to the Anti-Injunction Act for a different reason, namely because "[g]iven the nature of Monster's alleged constitutional violation, the Court finds that the principles of comity, equity, and federalism weigh in favor of the Court refraining from granting injunctive relief that would effectively enjoin the state proceeding." (ER28.) The City Attorney fails to discuss the district court's specific reasoning. As Plaintiffs demonstrated, the principles of comity, equity, and federalism weigh the other way—in favor of ruling on the merits of Plaintiffs' claims. The City Attorney fails to show otherwise. Further, the abuse of discretion standard does not apply here because it was improper in the first place to apply the Anti-Injunction Act. *See California v. Randtron*, 284 F.3d 969, 974 (9th Cir. 2002)(only if an injunction falls within the

---

parties affected an unconstitutional act, violating the Federal Constitution." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992).

purview of the Anti-Injunction Act does the court review for abuse of discretion the district court's decision whether to grant the injunction).

## CONCLUSION

For the foregoing reasons, the district court's grant of the City Attorney's motion to dismiss should be reversed.

Dated:  April 1, 2015          MORRISON & FOERSTER LLP

By:  /s/ Dan Marmalefsky
Dan Marmalefsky

*Attorneys for Plaintiffs-Appellants*
*Monster Beverage Corporation*
*and Monster Energy Company*

30

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure and Rule 32-1 of the Ninth Circuit, Plaintiffs-Appellants Monster Beverage Corporation and Monster Energy Company hereby certify that the typeface in the attached brief is proportionately spaced and 14 points or more and that the word count for the portions subject to the restrictions of Rule 32(a)(7)(B)(ii) is 6981.

Dated: April 1, 2015                    MORRISON & FOERSTER LLP

By: /s/ Dan Marmalefsky
    Dan Marmalefsky

*Attorneys for Plaintiffs-Appellants*
*Monster Beverage Corporation*
*and Monster Energy Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 1, 2015, I electronically filed the foregoing

with the Clerk of the Court for the United States Court of Appeals for the Ninth

Circuit by using the appellate CM/ECF system. All participants in the case are

registered CM/ECF users and will be served by the appellate CM/ECF system.


Dated: April 1, 2015          MORRISON & FOERSTER LLP

                                By: /s/ Dan Marmalefsky
                                     Dan Marmalefsky

                                 *Attorneys for Plaintiffs-Appellants*
                                 *Monster Beverage Corporation*
                                 *and Monster Energy Company*

sf-3513035